**STATE of Minnesota, Respondent,**

v.

**James Albert DEWALD, Appellant.**

**No. C5-89-2273.**

Supreme Court of Minnesota.

Jan. 18, 1991.

John Stuart, State Public Defender, Susan J. Andrews, Asst. State Public Defender, St. Paul, for appellant.

Hubert H. Humphrey III, Minnesota Atty. Gen., St. Paul, Thomas L. Johnson, Hennepin County Atty., Anne E. Peek, Asst. County Atty., Minneapolis, for respondent.

WAHL, Justice.

James Albert DeWald was convicted of first degree premeditated murder, Minn. Stat. § 609.185(1) (1990), and first degree felony murder, Minn.Stat. § 609.185(3) (1990), in connection with the death of 74–year–old Marjorie Haugsrud on October 14, 1988. He appeals the convictions claiming that the trial court committed reversible error by admitting evidence of his participation in a second murder three weeks after the Haugsrud homicide. We affirm.

Mrs. Haugsrud's body was found at the foot of her basement stairs with a "Prince Devonshire" butcher knife in her back. She had been stabbed six times, strangled, and struck several times on the head with a blunt instrument. Police surmised that the motive for the murder had been robbery because a bedroom dresser drawer, where Mrs. Haugsrud kept her jewelry, and several kitchen drawers appeared to have been searched. Mrs. Haugsrud's billfold, driver's license, checkbook and credit cards were all missing. An empty purse was found back in a cabinet under the kitchen sink.

Other than the knife in Mrs. Haugsrud's back, there was little physical evidence at the scene. A partial footprint in blood was discovered near the body in the basement. One fingerprint was recovered from the cold water tap on the kitchen sink. A spot of what appeared to be blood was found at the top of the basement stairs, another spot two feet into the kitchen and a third on the rubber mat in front of the sink. The sink was damp and a damp paper towel was in a nearby garbage can. Three drawers in the kitchen were partially open. One of the drawers contained knives, but none of the knives matched the "Prince Devonshire" knife that was recovered from Mrs. Haugsrud's back. The front door to the Haugsrud home in south Minneapolis was unlocked and there were no signs of forced entry. Police therefore concluded that Mrs. Haugsrud knew her assailant, and that the assailant had entered and exited through the front door.

The police continued investigating the murder, but with little success. They could not locate the seller of the "Prince Devonshire" knife, and their attempts to identify the fingerprint taken from the kitchen tap were unsuccessful.

Three weeks later, on November 4, 1988, an elderly man, Walter Werdal, was found dead in his south Minneapolis home. He had been beaten on the head with a baseball bat. Werdal's home had been ransacked and police determined that the killer had entered the home at night by forcing in a basement window. Werdal's girlfriend named several possible suspects, including defendant. While comparing defendant's fingerprints to those lifted from the Werdal murder scene, the police positively identified the fingerprint taken from Haugsrud's faucet as the print of defendant's left thumb.

Based on the fingerprint match, the police obtained a search warrant for the apartment where defendant lived with his sister Linda. There police found a "Prince Devonshire" knife on the kitchen counter. Defendant's sister identified the knife as hers but later recanted her identification.

A number of items from the Werdal home were discovered in the defendant's apartment. Defendant was arrested and his blood-spattered tennis shoes were seized. Defendant denied ever having been in Mrs. Haugsrud's house, but police later learned that defendant had been in Mrs. Haugsrud's house on two occasions approximately a year earlier, once to clean her carpet and a second time to repair a carpet seam.

Defendant was indicted for two counts of first degree murder for Haugsrud's death and three counts of first degree murder for Werdal's death. The cases were tried separately with the Haugsrud case being tried first. The trial court allowed evidence of the Werdal murder to be introduced as *Spreigl* evidence in the Haugsrud trial, thus the Haugsrud jury heard evidence of both homicides. Defendant did not testify but presented alibi testimony that he had been sleeping at a friend's house at the time Mrs. Haugsrud was killed.

The single issue raised for decision is whether the trial court erred in admitting *Spreigl* evidence of a second homicide allegedly committed by defendant. The defendant argues that the prejudicial impact of that evidence outweighs its probative value.

We have recognized the validity of this concern. We have recognized, through the words of Dean Wigmore, that

> The natural and inevitable tendency of a tribunal—whether judge or jury—is to give excessive weight to the vicious record of crime thus exhibited, and either to allow it to bear too strongly on the present charge, or to take the proof of it as justifying a condemnation irrespective of guilt of the present charge.

*State v. Spreigl,* 272 Minn. 488, 496, 139 N.W.2d 167, 172 (1965) (quoting 1 Wigmore, Evidence [3 ed.] §§ 193, 194).

Evidence of other crimes is inadmissible under Minn.R.Evid. 404(b) to prove the accused's character in order to show that he acted in conformity therewith in the present case. Such evidence may be admitted, however, "to establish motive, intent, absence of mistake or accident, identity or

common scheme or plan." *State v. Slowinski,* 450 N.W.2d 107, 113 (Minn.1990) (citing *State v. Spreigl,* 272 Minn. 488, 491, 139 N.W.2d 167, 169 (1965)). Admission of *Spreigl* evidence rests within the sound discretion of the trial court and a trial court's ruling will not be disturbed absent a clear abuse of discretion. *Id.* On the other hand, this court has held that when the admissibility of *Spreigl* evidence is unclear, the accused must be given the benefit of the doubt and the evidence rejected. *State v. Titworth,* 255 N.W.2d 241, 246 (Minn.1977) (citing *State v. Saucedo,* 294 Minn. 289, 293, 200 N.W.2d 37, 40 (1972)).

■ In determining the admissibility of *Spreigl* evidence, the trial court must find (1) that the evidence is clear and convincing that defendant participated in the *Spreigl* offense, (2) that the *Spreigl* evidence is relevant and material to the state's case, and (3) that the probative value of the *Spreigl* evidence is not outweighed by its potential for unfair prejudice. *State v. Norris,* 428 N.W.2d 61, 69 (Minn.1988) (quoting *State v. Morrison,* 310 N.W.2d 135, 137 (Minn.1981)). The trial court found evidence of the Werdal murder admissible because (1) it was related in time and place, (2) it established identity, motive and modus operandi and (3) the probative value of the evidence outweighed any prejudicial effect.

There was clear and convincing evidence that defendant murdered Werdal. The state's evidence was as follows: Defendant knew Werdal. A station wagon matching the color and description of defendant's car was seen leaving Werdal's back alley at approximately the same time as Werdal was murdered. Spots of blood consistent with Werdal's blood and inconsistent with defendant's blood were found on defendant's left shoe. Defendant's fingerprint was found on a cigarette carton on the floor of Werdal's bedroom. A bloody tee shirt with a "W" on the label, identical to the shirt found by Werdal's body, was found in the back seat of defendant's station wagon. Finally, numerous items belonging to Werdal were found in defendant's apartment as well as in his car.

The Werdal evidence was also "relevant and material" to the state's case in the Haugsrud murder. In order to be relevant and material, the *Spreigl* offense should be similar to the charged offense either in time, location, or modus operandi. *Norris,* 428 N.W.2d at 69. Here, there were several similarities between the Haugsrud and Werdal homicides. The homicides occurred within three weeks of each other and both took place in south Minneapolis. Defendant knew both victims, each of whom was elderly and living alone. Both victims were robbed, and both were struck repeatedly on the head with a blunt instrument.

Although there were some dissimilarities between the two offenses [1], this court has never required absolute similarity between the charged crime and the *Spreigl* crime. *See State v. Filippi,* 335 N.W.2d 739, 743 (Minn.1983) (admission of *Spreigl* evidence upheld though different offense occurred four and a half years prior to present offense in another state); *State v. Walker,* 310 N.W.2d 89, 91 (Minn.1981) ("While there were some dissimilarities in the manner of commission of the charged offense and the *Spreigl* offense, the offenses were quite similar in a number of ways and were also committed within a month of each other and both in the Twin Cities.").

■ The most troubling question on review is whether the probative value of the Werdal evidence outweighs its potential unfair prejudice. On the one hand, there is no doubt that the Werdal evidence had probative value on the issues of identity and common scheme or plan in the Haugsrud case. On the other hand, the risk of prejudice that looms whenever *Spreigl* evidence is admitted, was manifest in this case. While evidence of the Haugsrud murder was weak and circumstantial, the

---

1. Werdal's house was forcibly entered through a basement window while Haugsrud's house showed no signs of forcible entry; Werdal's home was ransacked while the police could only surmise that Haugsrud's drawers had been gone through; numerous items belonging to Werdal were found at DeWald's residence while no property of Haugsrud's was ever recovered; Werdal was only beaten over the head while Haugsrud was beaten, strangled and stabbed.

Werdal evidence was ample and compelling. The jury heard far more testimony concerning the Werdal murder than they heard concerning the Haugsrud murder and viewed numerous exhibits from the Werdal case, including the baseball bat and the bloody tee shirt and shoes. There is a strong possibility that a jury might convict defendant for the Haugsrud murder based solely on the Werdal evidence. Prevention of a conviction based on prejudice created by evidence of other crimes is the underlying purpose for the exclusionary rule embodied in Minn.R.Evid. 404.

In weighing the probative value against the prejudicial effect, the trial court must consider the extent to which the *Spreigl* evidence is crucial to the state's case. This court has stated that *Spreigl* evidence is "admissible *only* if the trial court finds the direct or circumstantial evidence of defendant's identity is otherwise weak or inadequate, and that it is necessary to support the state's burden of proof." *State v. Billstrom*, 276 Minn. 174, 178, 149 N.W.2d 281, 284 (1967) (emphasis added). *Accord Slowinski*, 450 N.W.2d at 114 (*Spreigl* evidence may be admitted where it is "necessary to support the state's burden of proof.").

When, as here, the issue of whether the probative value of the evidence outweighs its potential for unfair prejudice is close, the trial court must pay particular heed to the *Billstrom* need factor. In this case, the state's need for the *Spreigl* evidence was established by an offer of proof that without the proffered evidence, the state would be left with only the knife and the fingerprint on the water tap for proof. *See Slowinski*, 450 N.W.2d at 114 (in unwitnessed sexual assault and murder case, admission of *Spreigl* evidence was upheld because absent that evidence, the state would have been left with three fingerprints, a knife and a pair of gloves). Moreover, this court has held that where, as here, identity is an issue and the defendant presents an alibi, the state has a right to bolster its position with *Spreigl* evidence. *Billstrom*, 276 Minn. at 177–78, 149 N.W.2d at 284. Accordingly, at the time of the pre-trial ruling, the trial court had sufficient grounds to determine that the

*Spreigl* evidence was necessary to support the state's burden of proof and that the probative value of the evidence outweighed its potential for unfair prejudice. Because all of the requirements for admissibility are satisfied, we hold that the trial court properly admitted *Spreigl* evidence of a second homicide allegedly committed by defendant.

The trial court in this case properly exercised its discretion in making its ruling prior to trial based on an offer of proof. In the interest of justice, however, we counsel trial courts to consider in the future the use of additional procedural precautions when there is a high risk of potential prejudice to the defendant.

First, though the comment to Rule 11 of the Minnesota Rules of Criminal Procedure indicates that the trial court should determine at the omnibus hearing whether the *Spreigl* evidence is clear and convincing, the trial court should postpone the final decision on admissibility of the evidence until the state has presented all non-*Spreigl* evidence and the strength of the prosecution's case can be determined. *See State v. Rainer*, 411 N.W.2d 490, 496 n. 1 (Minn.1987). At that juncture, the trial court can fully assess whether or not the *Spreigl* evidence is crucial to the state's burden of proof.

The facts in this case are instructive. At a pre-trial hearing, the state asserted that its case against defendant was weak because (1) the partial fingerprint was of questionable value when defendant had been in the victim's residence with permission eleven months prior to the murder, and (2) defendant's sister had recanted her identification of the "Prince Devonshire" knife found in the apartment where she lived with defendant.

At trial, however, both of these apparent weaknesses were diminished by in-court testimony. There was compelling opinion testimony from the fingerprint expert that the print lifted from Haugsrud's cold water tap was the print of the last person to touch it. This opinion was based on the fact that fingerprints are unlikely to last

for eleven months, the period that had elapsed since defendant was last in the Haugsrud home, on an object that is constantly exposed to water and repeatedly touched by others. The expert also based his opinion on the fact that the print lifted from the tap was not smeared by prints of subsequent users.

In addition, Linda DeWald's credibility as to the identification of the "Prince Devonshire" knife was significantly undermined on cross-examination. The prosecutor elicited testimony that DeWald identified the knife as hers prior to learning that the knife incriminated her brother and that she recanted the identification of the knife only when apprised of its significance.

■ After this evidence was presented, the state's case was significantly fortified as to identity of defendant and of the murder weapon. In addition, the state offered evidence that defendant had initially lied by telling police he did not know Haugsrud and had never been in her residence. We therefore note that while at pre-trial it may appear that the state needs the *Spreigl* evidence in order to support its burden of proof, the trial court, after examining the evidence presented by the state at trial, could determine that the state's case was sufficiently strong without the *Spreigl* evidence.[2]

Second, the trial court should consider, in a close case, requiring an evidentiary hearing to determine the admissibility of *Spreigl* evidence rather than relying on the offer of proof procedure. A full hearing may not always be feasible or necessary and the trial court has broad discretion in determining whether or not to require a hearing. *See State v. Lindahl*, 309 N.W.2d 763, 766 (Minn.1981). We simply remind the trial courts that when the risk of prejudice threatens to outweigh the probative value of the *Spreigl* evidence, a full hearing may assist the court in assessing the weight of each factor.

In this case, the trial court, in a proper exercise of its discretion, made a pre-trial

ruling based on an offer of proof. Moreover, the potential for prejudicial impact from the *Spreigl* evidence was arguably lessened by the trial court's numerous cautionary instructions to the jury, first, at the trial's beginning, later, before the *Spreigl* witnesses testified, and finally, in the trial court's final instructions. *See Slowinski,* 450 N.W.2d at 114–15; *Rainer,* 411 N.W.2d at 498. While affirming the conviction, we remind the trial courts of the need to be vigilant in observing the safeguards we established in *Billstrom* and advise the use of additional procedural precautions when the risk of unfair prejudice threatens the defendant's right to a verdict on the merits.

Affirmed.

GARDEBRING, J., took no part.

---

2. The prosecution and the defense made a stipulated request for a pretrial ruling on the grounds that the decision would influence jury selection. A judge has discretion, however, to deny such a request.