STATE of Minnesota, Respondent,

v.

Johnny Jefferson ELVIN, a/k/a Johnny Jefferson Williams, Appellant.

No. C3-91-876.

Court of Appeals of Minnesota.

March 3, 1992.

Review Denied April 29, 1992.

572

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Scott A. Hersey, Isanti County Atty., Cambridge, for respondent.

John M. Stuart, State Public Defender, Lawrence W. Pry, Asst. Public Defender, St. Paul, for appellant.

Considered and decided by NORTON, P.J., and RANDALL and CRIPPEN, JJ.

## OPINION

RANDALL, Judge.

Appellant was convicted by a jury of first and third degree assault in violation of Minn.Stat. §§ 609.221, 609.223 (1990). Appellant received a 125 month sentence, representing a 25 percent upward durational departure from the presumptive 98 month sentence. This appeal followed.

## FACTS

The victim was living at appellant's home at the time her injuries were inflicted. She told her mother, medical personnel, and the police that appellant had beaten her. At trial, she testified appellant had kneed her repeatedly in the abdomen. She stated that after appellant stopped, she planned to wait until appellant fell asleep before leaving but also fell asleep. When she awoke, she left and drove to her parents' home. She was brought to the local hospital and transferred for emergency surgery. At the hospital, a nurse took photographs of the victim's external bruises which were shown at trial.

Appellant claims the injuries resulted from the victim and himself falling down a staircase together. Appellant initially told police in a tape-recorded statement the victim had thrown herself on top of him, hitting his knees which he had put up to protect himself. Appellant claims he also told the police about the fall down the stairs before the deputy taking the statement turned on the tape recorder. The deputy denied hearing appellant say anything about a fall down a staircase. Appellant claims they went back to bed after the fall and she left the next morning while he was in the shower.

The victim's injuries were severe. She had a large amount of blood in her abdomen and injuries to her liver and right kidney. The right renal artery leading to the kidney had been severed. Her gallbladder had to be removed to repair her liver. The kidney did not recover, and part of her liver remains nonfunctional. The doctor who performed the surgery testified she would not have survived without surgery.

There was testimony at trial from experts on both sides that the injuries were consistent with the victim's testimony. There was also testimony the injuries could possibly be from a fall down a staircase, but neither doctor had ever seen such internal injuries result from such a fall. Also at trial, *Spreigl* evidence of two other incidents of appellant's assaultive behavior toward the victim were admitted. Incidents involving other persons were not admitted, except for two incidents used to impeach appellant's character evidence.

Appellant claimed the victim was possibly suffering from an affective disorder and sought access to her psychological and psychiatric records for proof of his theory. The trial court denied access and also denied an in camera review until later when considering a motion for new trial. The

trial court also refused to allow an adverse psychological examination of the victim. In addition, appellant was not allowed to present evidence of a domestic abuse restraining order he had obtained against the victim.

## ISSUES

1. Did the trial court err by refusing appellant access to the victim's psychological and psychiatric records or by refusing to order an adverse psychiatric examination?

2. Did the trial court err by admitting *Spreigl* evidence of appellant assaulting the same victim?

3. Did the trial court err by not allowing appellant to admit evidence he had obtained a domestic abuse restraining order against the victim?

4. Did the trial court abuse its discretion by imposing a 25 percent upward durational departure in sentencing?

## ANALYSIS

### I.

*Psychological Records/Psychiatric Examination*

Appellant claims the trial court's denial of access to the victim's psychological and psychiatric records violated his right to a fair trial. Appellant contends the victim has an affective disorder which could affect her credibility and that her records are necessary to prove his theory. This court has found denial of access after the trial court has made an in camera review to be a proper exercise of discretion. *State v. Axford*, 409 N.W.2d 893, 897 (Minn.App.1987), *rev'd on other grounds*, 417 N.W.2d 88 (Minn.1987).

In this case, the trial court did not make an in camera review during trial, but instead waited until after a motion for new trial had been made. The court found appellant had effectively cross-examined the victim, and evidence of the victim's depression and other behavior was brought out at trial. The court found appellant's expert could not "have formed the opinion that she was so mistaken because of her emotional instability as to the effects of what caused the injuries."

■■■ The in camera review should have been conducted during the trial. But, we find the trial court acted within its discretion in denying appellant access to those records and we do not find reversible error. (To the extent appellant's supplemental brief and appendix contains material regarding this and other issues outside the record, it is stricken.)

■■■ The trial court did not err by refusing to order an adverse psychiatric examination of the victim. There is trial court discretion to order adverse psychological examinations in criminal cases, but the discretion should be used judiciously and in a balanced way. *See State v. Moore*, 433 N.W.2d 895, 900 (Minn.App. 1988) (citing *State v. Cain*, 427 N.W.2d 5, 8–9 (Minn.App.1988)). We find the trial court was acting within its discretion by refusing, on these facts, to order an adverse examination.

### II.

*Spreigl Evidence*

The state gave notice of seven *Spreigl* incidents. Only two were allowed as *Spreigl* evidence. Two others came in as rebuttal of appellant's character evidence. Appellant claims the admission of the *Spreigl* evidence was prejudicial.

■■■ Evidence of other crimes or bad acts is inadmissible to prove a criminal defendant's bad character or to show conformity with that character. *State v. DeWald*, 464 N.W.2d 500, 506 (Minn.1991). Such evidence may be admissible for other ("*Spreigl*") purposes, such as motive, intent, absence of mistake or accident, identity, common scheme or plan. *State v. Slowinski*, 450 N.W.2d 107, 113 (Minn.1990). For *Spreigl* evidence to be admissible, there must be clear and convincing evidence the defendant committed the other crime or bad act, the other incident must be relevant and probative, and its probative value must not be outweighed by its preju-

dice. *DeWald,* 464 N.W.2d at 503; *see also State v. Robinson,* 427 N.W.2d 217, 227 (Minn.1988).

■ The evidence of appellant's other crimes or bad acts was clear and convincing. The trial court allowed the state to admit evidence of appellant's conviction for fifth degree assault for punching the same victim in the stomach in September 1989. Also, the victim was allowed to testify of another incident where appellant choked her until she passed out in September of 1990, after the assault for which appellant was on trial.

Here, the incidents involved assaults by the defendant against the same victim within a year of the charged offense. The evidence is relevant and material to show absence of accident, which bears on appellant's claim the injuries were caused by an accident. *See State v. Drieman,* 457 N.W.2d 703, 710 (Minn.1990) (evidence of assault on another vulnerable victim admissible to show absence of accident).

■ Appellant argues the *Spreigl* evidence was more prejudicial than probative. The trial court must consider the necessity of the evidence to the state's case. *De-Wald,* 464 N.W.2d at 504. Evidence of previous domestic violence is admissible to illuminate the relationship between defendant and victim. *State v. Currie,* 400 N.W.2d 361, 367 (Minn.App.1987), *pet. for rev. denied* (Minn. Apr. 17, 1987); *State v. Waukazo,* 374 N.W.2d 563, 565 (Minn.App. 1985), *pet. for rev. denied* (Minn. Nov. 1, 1985). We find the trial court did not err by admitting the *Spreigl* evidence.

■ The *Spreigl* evidence was admissible in light of these considerations. But we caution trial courts about admitting *Spreigl* evidence of incidents occurring *after* the charged offense. The September 1990 incident occurred after the assault for which appellant is on trial. *Spreigl* evidence involving incidents occurring after the charged offense has been found to be admissible. *See DeWald,* 464 N.W.2d 502–04 (similar incident occurring three weeks after charged offense); *Ture v. State,* 353 N.W.2d 518, 521–22 (Minn.1984) (similar in-

cidents occurring within days after charged offense). However, a trial court should scrutinize *Spreigl* evidence of incidents occurring after the charged offense even more strictly. A jury may be improperly influenced by knowing a defendant has committed a similar act after the charged offense, increasing the inherent danger of prejudice in *Spreigl* evidence. A defendant's actions after a charged offense have less credance to support a *Spreigl* analysis than actions before the charged offense.

The trial court gave a proper limiting instruction to the jury when the evidence was received and as part of the final instructions. *See State v. Forsman,* 260 N.W.2d 160, 169 (Minn.1977). The trial court's instructions on *Spreigl* evidence:

> The evidence concerning a prior conviction of the Defendant for 5th Degree Assault stemming from an incident dated September 3rd or 4th, 1989, in St. Cloud and evidence of an assaultive incident that took place on or about September 3rd or 4th, 1990, are admitted only for your consideration in determining whether or not the Defendant committed the crimes of which he is presently charged and no other crimes.

> The Defendant is not being tried for and may not be convicted of any other crime than the crimes charged in the complaint. You are instructed specifically that you are not to convict the Defendant solely on the basis of any occurrence on the above noted September 1989 or 1990 dates. To do so might result in unjust and double punishment.

■ Appellant contends these instructions were inadequate since they did not specify for what permissible inferences the jury could draw from the *Spreigl* evidence or the purposes for which the evidence could be used by the jury. The trial court's instructions were proper. Juries are not normally instructed as to the possible inferences to be drawn from the evidence. *See* 10 Minnesota Practice, CRIM. JIG, 3.16 (1990) and accompanying comment. Moreover, appellant did not object at trial to the jury instruction. *See State v. Bazoff,* 300 N.W.2d 179, 280 (Minn.1981) (failing to ob-

ject to this instruction at trial forfeits review on appeal); *State v. Matteson*, 287 N.W.2d 408, 412 (Minn.1979) (court need not address appellant's challenge to *Spreigl* jury instruction for not stating the applicable exception where no objection made at trial, and was the standard instruction). Finally, the jury was specifically instructed not to convict solely on the other crime or bad act evidence. *See State v. Haala*, 415 N.W.2d 69, 77 n. 2 (Minn.App. 1987), *pet. for rev. denied* (Minn. Dec. 22, 1987).

## III.

### Restraining Order

 Appellant contends the trial court's refusal to allow evidence of a restraining order he had obtained against the victim violated his constitutional right to a defense. Evidentiary rulings are within the trial court's discretion and will not be reversed absent a showing of clear abuse of discretion. *State v. Flores*, 418 N.W.2d 150, 158, 159 (Minn.1988). Appellant has the burden of showing the error and prejudice from the error. *State v. Loebach*, 310 N.W.2d 58, 64 (Minn.1981). The trial court did not allow evidence of the order since it would lead to collateral issues. Both parties had ignored court orders to avoid contact. The trial court's refusal to allow evidence of the restraining order did not preclude appellant from presenting his defense that the victim had acted irrationally and had attacked him. We find the trial court did not err by refusing to admit evidence of the order.

## IV.

### Sentencing

 The trial court sentenced appellant to 125 months, representing a 25 percent upward durational departure from the presumptive 98 month sentence for a person with his criminal history score. Upward departure is within the sentencing court's discretion if substantial and compelling aggravating circumstances are present. *State v. Best*, 449 N.W.2d 426, 427 (Minn.1989). The trial court empha-

sized the particular vulnerability of the victim as the reason for the departure. Upon review, the record must be examined to determine whether the reasons given by the trial court justify the departure. *Williams v. State*, 361 N.W.2d 840, 844 (Minn.1985). The trial court recognized particular cruelty and permanence of the injury were redundant factors in light of the elements of assault. *See State v. Peterson*, 329 N.W.2d 58, 60 (Minn.1983); *State v. Pierson*, 368 N.W.2d 427, 436 (Minn.App.1985); *State v. Ahern*, 349 N.W.2d 838, 841–42 (Minn.App.1984).

 Particular vulnerability of the victim has been used as a basis for upward durational departure. *State v. Wickstrom*, 405 N.W.2d 1, 6 (Minn.App.1987), *pet. for rev. denied* (Minn. June 30, 1987); *Stephens v. State*, 369 N.W.2d 603, 605 (Minn. App.1985). The record reflects repeated attacks by appellant upon the victim, after which she would return to him and continue the relationship. The trial court noted this pattern and also appellant's intimidation of the victim. The record supports the particular vulnerability found by the trial court. We find the trial court did not err by imposing a 25 percent upward durational departure.

## DECISION

The trial court did not err by refusing appellant access to the victim's psychological or psychiatric records or by refusing to conduct an in camera review of those records until consideration of a motion for a new trial. However, in the future the in camera review should take place during trial to avoid a retrial if evidence is improperly kept out. Refusal during trial still preserves the issue for appeal if there is a conviction, but if the trial judge becomes satisfied after the trial that the evidence should come in, there is no recourse but another trial.

The trial court did not err by admitting *Spreigl* evidence of other incidents involving the same victim.

The trial court did not err by refusing to allow appellant to introduce evidence of a

restraining order he had obtained against the victim.

The trial court did not err by giving appellant a sentence which represented a 25 percent upward durational departure.

Affirmed.