STATE of Minnesota, Respondent,

v.

Peter Gerard LONERGAN, Appellant.

No. C2–92–1897.

Court of Appeals of Minnesota.

Aug. 24, 1993.

Review Denied Oct. 19, 1993.

Considered and decided by PARKER, P.J., and LANSING and SHORT, JJ.

## OPINION

PARKER, Judge.

Appellant Peter Gerard Lonergan was convicted after a retrial on charges of first degree criminal sexual conduct committed against A.M., a minor. On appeal, Lonergan alleges five errors: (1) admission of out-of-court statements of A.M. based on a finding of A.M.'s unavailability; (2) admission of opinion evidence; (3) admission of *Spreigl* evidence of A.M.'s sister's videotaped testimony; (4) the trial court's conclusion that the defense attorney at trial rendered effective and competent assistance; and (5) imposition of a double durational departure under the patterned sex offender statute. We affirm on all issues.

## FACTS

In April 1991, A.M., then nine, began therapy with Dr. Winifred Scott, a clinical psychologist, for behavior problems in school. In June 1991, during a family therapy session, A.M. said he wished to tell his therapist something. In the 35–40 minute private interview following, the boy reported that he had been sexually abused by Lonergan, who was his babysitter and his father's cousin. He also told Scott that Lonergan had threatened to kill his mother if the abuse were revealed.

Scott described A.M.'s demeanor as follows:

[He] looked really frightened. He was embarrassed and appeared to be ashamed, and very reluctant * * *. His eyes were downcast. He appeared scared.

After the session, Scott told the boy's mother, Dora Hale, of the accusation and reported the allegation of abuse in a telephone call to Officer Kevin Kallestad.

Scott testified that at one session in November 1991, after a court hearing had been delayed, A.M. denied the abuse. However, when she told him to tell the truth and asked

Hubert H. Humphrey, III, Atty. Gen., St. Paul, James C. Backstrom, Dakota County Atty., James M. Crow, Asst. County Atty., Hastings, for respondent.

Phillip S. Resnick, Robert G. Davis, Minneapolis, for appellant.

whether the abuse happened or did not happen, he responded, "It happened."

On July 16, 1991, Officer Kallestad conducted a videotaped interview of A.M. Using words like "wienie," "butt," and "white stuff," the child provided graphic details of repeated and, at times, violent sexual abuse which included oral sex and attempted anal intercourse.

The boy also reported that Lonergan had gagged him with a bandana, tied his hands with ropes, and showed him pictures from Playboy and sexually explicit videotapes. Additionally, he said, Lonergan had used a shocker device, a Swiss army knife, and a butcher knife to threaten him.

Upon searching Lonergan's home, police found a shocker device, a bandana, and knives, but did not find Playboy magazines, sexually explicit videotapes, or ropes. Lonergan was charged with first degree criminal sexual conduct.

Pursuant to the defense request for an independent medical examination of A.M., the trial court appointed Dr. Jane Van Roekel, a pediatrician specializing in sexual abuse of children. Court documents reveal her appointment was pursuant to stipulation of the parties. She questioned and examined the boy in November 1991, and he told her of the abuse also.

At the first trial in December 1991, A.M. provided some details of the abuse, but replied "I forgot" to many of the questions. During this testimony, he left to go to the bathroom twice. His stepfather, David Hale, testified at the second trial that the boy threw up after giving testimony in the first trial.

The first trial ended in a hung jury, and the trial judge ordered a new trial.

On Jan. 13, 1992, both parties agreed to videotape testimony of A.M. and his sister, D.H., for use at the second trial.

A.M. was reluctant to testify at this hearing. He told the trial court, "I don't want him [defendant] in here;" "I don't want to;"

"It's hard." The trial court permitted him to leave the courtroom temporarily to collect himself. However, after Lonergan was brought into the courtroom, A.M. became silent and did not respond to the court's inquiries. A.M.'s father testified at the second trial that when Lonergan entered the courtroom, the boy covered his eyes and put his head down. The trial court found A.M. to be unavailable as a witness and excused him from testifying at this hearing. His sister, D.H., testified at the hearing, however, and her testimony alleging Lonergan abused her was videotaped and shown at the second trial.

In a pretrial hearing in February 1992, Lonergan objected to admission of A.M.'s out-of-court statements to Officer Kallestad, Dr. Van Roekel, and Scott. The trial court ruled A.M.'s out-of-court statements admissible.

Lonergan also objected to admission of *Spreigl* evidence. At trial, the only *Spreigl* evidence the court admitted was the videotaped interview of D.H.'s testimony. The court refused admission of four other *Spreigl* acts, namely, Lonergan's 1985 conviction for second degree criminal sexual conduct;[1] Kallestad's interviews (regarding alleged sexual abuse) of A.W. and T.W., children of Lonergan's girlfriend, Kathy White; and Dr. Levitt's interview of A.W.

The jury in the second trial convicted Lonergan.

The trial court denied Lonergan's post-trial motions for a new trial on the basis of errors committed at trial and ineffective assistance of counsel, and sentenced him to 268 months' imprisonment, double the presumptive guideline sentence. This appeal followed.

## ISSUES

I. Did the trial court err in admitting A.M.'s out-of-court statements based on the finding that he was unavailable to testify at the second trial?

---

1. The offense was digital fondling and penetration of a ten-year-old girl on two separate occasions. Defendant pleaded guilty.

II. Did the trial court abuse discretion in admitting opinion evidence?

III. Did the trial court abuse discretion in admitting *Spreigl* evidence?

IV. Did the trial court err in concluding Lonergan received effective assistance of counsel?

V. Did the trial court err in sentencing Lonergan to double the presumptive guidelines sentence under the patterned sex offender statute?

## DISCUSSION

### I. *A.M.'s Unavailability*

■ Rulings on evidentiary matters generally rest within the sound discretion of the trial court and will be reversed only if the trial court abused its discretion and the error substantially influences the jury to convict. *State v. Brown,* 455 N.W.2d 65, 69 (Minn. App.1990), *pet. for rev. denied,* (Minn. Jul. 6, 1990).

The trial court admitted the following out-of-court statements: (1) A.M.'s testimony at the first trial; (2) videotaped interviews of A.M. by Officer Kallestad and by Dr. Van Roekel; and (3) oral statements he made to Kallestad, Van Roekel, Winifred Scott, and his parents.

■ Various statutes, rules, and case law permit hearsay evidence of a witness who is "unavailable." The parties dispute whether A.M. was unavailable. A witness is unavailable if he "persists in refusing to testify concerning the subject matter of the declarant's statement despite an order of the court to do so." Minn.R.Evid. 804(a)(2).

The trial court, in its post-trial memorandum, found A.M. to be unavailable. The court noted:

> When the child came into the courtroom, he immediately refused to cooperate in the presence of the defendant. He cried and begged that he not be asked any questions * * *. He continued to refuse to answer any questions, *even after the Court instructed him to do so.* * * * The child was totally distraught.

The record supports the trial court's finding that A.M. was unavailable. A.M. repeatedly said he did not want to testify and then eventually made no response at all. This behavior constitutes persistent refusal to testify.

■ Lonergan next argues that the trial court failed to consider alternative methods of persuading A.M. to testify, applying, for example, a Minnesota statute that permits the trial court to order the taking of testimony with the defendant and alleged victim in separate rooms with television monitors. Minn.Stat. § 595.02, subd. 4(c) (1992).

There is no evidence that Lonergan requested alternative means of taking A.M.'s testimony for the second trial. Even if he did so, the statute he cites applies only to children under age ten at the time of the proceeding, and A.M. was age ten by the time of the January 1992 hearing.

We affirm the trial court's conclusion that A.M. was unavailable to testify.

### A. *Prior Testimony*

■ The trial court admitted A.M.'s testimony at the previous trial pursuant to Minn. R.Evid. 804(b)(1), which permits prior testimony of a witness now unavailable. It must be noted that A.M. was cross-examined at the first trial in Lonergan's presence, and therefore Lonergan had the opportunity to confront his accuser.

### B. *Out-of-Court Statements*

Minn.Stat. § 595.02, subd. 3 (1992), permits admission of out-of-court statements "made by a child under the age of ten years" if the witness is unavailable and there is corroborating evidence. As A.M.'s birthdate is November 6, 1981, he was under ten years of age when he made statements to Scott (June 1991); to Kallestad (July 1991); and to Dr. Van Roekel (Nov. 5, 1991), and therefore the statute applies.

■ Admission of out-of-court statements under the statute also requires "sufficient indicia of reliability." Minn.Stat. § 595.02, subd. 3(a) (1992). The state argues that the statements contain sufficient indicia

of reliability and therefore do not violate the confrontation clause of the federal constitution. Further, the state argues that Dr. Van Roekel's statements and videotape fall within the medical diagnosis exception to the general rule against hearsay.

### 1. Medical Diagnosis Exception

The medical diagnosis exception to the rule against hearsay provides for the admissibility of statements made for purposes of medical diagnosis or treatment. Minn.R.Evid. 803(4).

We disagree with Lonergan's assertion that *Ring v. Erickson,* 983 F.2d 818 (8th Cir.1992), bars admission of Dr. Van Roekel's testimony under this exception. In *Ring,* the Eighth Circuit held that the medical diagnosis exception was misapplied because there was no evidence that the alleged victim, a three-year-old, understood she was seeing a physician and that she was motivated to tell the truth so she could receive proper treatment. A.M., on the other hand, was old enough to understand he was seeing a physician and therefore could have a motive to speak truthfully so that he could receive proper treatment.

We conclude that Dr. Van Roekel's status as independent examiner, rather than A.M.'s treating physician, has little or no relevance to the issue of the truthfulness of his statements to her. An older person, for example, knowing that Dr. Van Roekel was essentially chosen by the defense, might have a motive to fabricate, but it seems unlikely that a child of nine would have any greater motive to lie to an independent examiner than to a treating physician. Additionally, because the defense requested an independent examination and stipulated to the court's appointment of Dr. Van Roekel as independent examiner, they have essentially waived any objection to admission of statements made to her during that examination. We further note that Dr. Van Roekel's questioning of A.M. focused on the medical details of the abuse rather than on secondary details such as the perpetrator's appearance or clothing. Dr. Van Roekel testified at both trials and was cross-examined by the defense at both trials. The defense thus had ample opportunity to cross-examine and expose weaknesses in her testimony.

### 2. Residual Exception

Lonergan argues that admission of the out-of-court statements denied him his Sixth Amendment right to confront the declarant. We disagree.

■■■■ The rule against hearsay generally protects an accused's right to confront witnesses against him. Generally, even hearsay statements are admissible under the confrontation clause, however, if (1) the declarant is unavailable;[2] and (2) the statement bears indicia of reliability. *Idaho v. Wright,* 497 U.S. 805, 814–15, 110 S.Ct. 3139, 3146, 111 L.Ed.2d 638 (1990); *State v. Oslund,* 469 N.W.2d 489, 493 (Minn.App.1991), *pet. for rev. denied,* (Minn. Jul. 24, 1991).

Reliability can be inferred if the statement falls within a firmly rooted exception to the rule against hearsay, for example, statements under belief of impending death (Minn. R.Evid. 804(b)(2)). Such statements satisfy "the constitutional requirement of reliability because of the weight accorded longstanding judicial and legislative experience in assessing the trustworthiness of certain types of out-of-court statements." *Wright,* 497 U.S. at 817, 110 S.Ct. at 3147.

■■■■ Statements falling within a residual exception to the hearsay rule (Minn. R.Evid. 804(b)(5), 803(24)) are not firmly rooted exceptions and are presumed unreliable and inadmissible unless supported by "a showing of particularized guarantees of trustworthiness." *Id.,* 497 U.S. at 816–19, at 3147–48; *State v. Lanam,* 459 N.W.2d 656, 661 (Minn.1990), *cert. denied,* 498 U.S. 1033, 111 S.Ct. 693, 112 L.Ed.2d 684 (1991). The trustworthiness of a statement is determined by the totality of circumstances, rather than

---

**2.** Unavailability of a declarant is not always a prerequisite to admissibility of out-of-court statements. *State v. Larson,* 472 N.W.2d 120, 123–26 n. 1 (Minn.1991). Unavailability may be a requirement for statements falling within the resid-ual exception. *See White v. Illinois,* —— U.S. ——, ——, 112 S.Ct. 736, 743, 116 L.Ed.2d 848 (1992) (unavailability not a prerequisite if statement falls within firmly rooted hearsay exception).

by a "preconceived and artificial litmus test." *Wright,* 497 U.S. at 819, 110 S.Ct. at 3148–49.

■ In sexual abuse cases, courts use various factors to evaluate out-of-court statements of child witnesses, for example, spontaneity and consistent repetition, mental state of declarant, use of terminology unexpected of a child of similar age, and lack of motive to fabricate. *Id.* at 821–22, 110 S.Ct. at 3150.

In this case the remaining out-of-court statements are not admissible under any of the established exceptions to the hearsay rule and therefore must be examined individually under *Wright.*

a. *Officer Kallestad's Videotaped Interview*

■ We agree with the trial court that Kallestad's videotaped interview contains guarantees of trustworthiness, namely, the non-leading nature of most questions, use of age-appropriate language by the boy, and his good memory of details.

As the Wisconsin Supreme Court noted in *State v. Sorenson,* 143 Wis.2d 226, 421 N.W.2d 77, 86 (1988), "[a] young child is unlikely to fabricate a graphic account of sexual activity because it is beyond the realm of his or her experience." Here, the boy, using age-appropriate words such as "wienie," "butt," "white stuff," related graphic details of oral sex, ejaculation, and other sexual acts that a child his age would not be expected to know unless he had experienced them. The level of detail and consistency in his statements to Kallestad and Dr. Van Roekel provide further guarantees of trustworthiness.

We note that Officer Kallestad testified at both trials, as well as testifying at the omnibus hearing. The defense thus had ample opportunity to cross-examine Kallestad and expose weaknesses in A.M.'s report of sexual abuse. The trial court did not abuse discretion in admitting this taped interview.

b. *Winifred Scott*

■ The guarantees in the statement to Winifred Scott, A.M.'s therapist, are perhaps stronger than in the statement to Kallestad, because Scott did not anticipate hearing of the abuse. She was treating A.M. because of complaints of disruptive behavior at school, not because of any suspicion of abuse. The boy seems to have initiated discussion of the sexual abuse spontaneously, and Scott asked few, if any, leading questions. A.M.'s mental state as described by Scott, namely, that he looked frightened, embarrassed, and ashamed, provides an additional guarantee of trustworthiness. Admission of this testimony was within the trial court's discretion.

c. *Parents' Testimony*

■ We first note that the defense did not object to the parents' statements either at the pretrial or at trial, and therefore we are not bound to examine this issue on appeal. *See Gruenhagen v. Larson,* 310 Minn. 454, 457, 246 N.W.2d 565, 568 (1976) (errors not presented to trial court for consideration are not reviewable on appeal). Moreover, A.M.'s parents did not testify about the abuse but, rather, of threats their son had reported to them. Other speakers, for example, Dr. Van Roekel, Scott, and Kallestad, also reported these threats, however, and therefore the parents' testimony was merely cumulative. Consequently, we find no abuse of discretion here.

II. *Opinion Evidence*

■ Lonergan complains that Dr. Van Roekel and Scott inappropriately gave their opinions as to the truth of A.M.'s allegations.

The defense did not object to either witness's testimony at trial or at the post-trial hearing and therefore cannot now raise this issue on appeal. *See id.* Furthermore, as the prosecution correctly notes, the defense itself opened the door to this subject on cross-examination when it questioned Dr. Van Roekel about possible sources of A.M.'s knowledge of sexual activity. Moreover, the defense counsel cross-examined Scott vigorously as to other possible causes of A.M.'s post-traumatic stress disorder, suggesting possible physical abuse by A.M.'s father and thus mitigating any prejudicial effect of her opinions.

Finally, Lonergan challenges admission of the parents' testimony that A.M. was a generally truthful child. However, the trial transcript does not reveal an objection by the

defense, and therefore we do not consider this issue. *See id.*

### III. *Spreigl Evidence*

The trial court admitted the videotaped testimony of A.M.'s sister, D.H., taken on January 13, 1992, the same hearing at which the boy refused to testify. Lonergan argues the trial court erred in admitting this evidence.

Generally, evidence of "other crimes" or "bad acts" is not admissible to prove that defendant committed the act for which he is charged. Minn.R.Evid. 404(b). Such evidence, however, is admissible in a criminal prosecution to show identity, opportunity or plan, but must be proved by clear and convincing evidence. *Id.*

The trial court must weigh the probative value of the evidence against its prejudicial effect. *State v. DeWald,* 464 N.W.2d 500, 503 (Minn.1991). If the relative weights are close, then the trial court must pay particular heed to the state's need for the *Spreigl* evidence. *Id.* at 504.

The trial court concluded that D.H.'s videotaped testimony was clear and convincing evidence of another crime committed by Lonergan and was relevant to show opportunity and common scheme. The court noted that in the prior trial Lonergan had argued it was unreasonable to believe he would abuse one child and not others while babysitting and having access to them all. In view of the hung jury in the first trial, this reasoning is compelling and refutes claims of abuse of discretion in admission of this evidence. The trial court applied careful and discriminating judgment in excluding evidence of all but one of the five proffered *Spreigl* incidents.

### IV. *Ineffective Assistance of Counsel*

To prove ineffective assistance of counsel, a defendant must show the counsel's representation fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Gates v. State,* 398 N.W.2d 558, 561 (Minn.1987).

Lonergan failed to satisfy this test.

He alleged, for example, that his defense attorney at trial made serious errors, such as failing to call as a witness Kathy White, who might have provided an alibi for times during which the abuse is claimed to have occurred. Defense counsel testified at the post-trial proceeding that he did not call White as a witness because of *Spreigl* evidence relating to allegations of sexual abuse by White and because discussions with the jury from the first trial revealed that the jurors took a "less than favorable view of her testimony." Defense counsel had sensible tactical reasons for deciding not to call this witness.

Lonergan also argues his counsel should have hired a psychological expert, but does not explain how the expert could have helped him.

Transcripts of the trial and other proceedings show that defense counsel challenged the prosecution in every proceeding and argued his client's case vigorously. He was successful in obtaining a hung jury in the first trial and succeeded in keeping out four of the five *Spreigl* incidents proffered in the prosecution of the second trial. Lonergan has failed to show any conduct falling below "an objective standard of reasonableness." Accordingly, we affirm the trial court's conclusion that defense counsel rendered effective assistance.

### V. *Sentencing*

Lonergan alleges the trial court erred in imposing a sentence of 268 months, a double durational departure from the guidelines sentence. We disagree.

A trial court may depart upward only if substantial and compelling aggravating circumstances are present. *State v. Best,* 449 N.W.2d 426, 427 (Minn.1989). A departure from the sentencing guidelines will not be reversed absent clear abuse of discretion. *State v. Garcia,* 302 N.W.2d 643, 647 (Minn.1981).

Under the Minnesota Patterned Sex Offender Act, however, a court *shall* sentence a person to not less than double the presumptive sentence if the crime for which the offender is convicted is "part of a predatory pattern of behavior that had criminal sexual

conduct as its goal." Minn.Stat. § 609.1352, subd. 1(1) (1990). Because the statute mandates a minimum double presumptive sentence, it is not an abuse of discretion to impose such a sentence if the evidence supports application of the statute. We hold that it did.

■ Lonergan argues he was denied due process because he did not receive an evaluation at St. Peter Regional Treatment Center, as ordered by the court. The patterned sex offender statute, however, requires only "a professional assessment by an examiner experienced in evaluating sex offenders," not an evaluation at a psychiatric hospital. Minn.Stat. § 609.1352, subd. 1(3) (1990). The requirement was met when Lonergan was evaluated by a psychologist, Peter Marston, who has a Ph.D. in clinical psychology and has conducted approximately 300 evaluations of alleged sex offenders.

Lonergan incorrectly asserts that the trial court was required to order a special term of conditional release, under subdivision 5 of the patterned sex offender statute. The statute explicitly leaves the matter of conditional release to the discretion of the sentencing court. *See* Minn.Stat. § 609.1352, subd. 5 (1990) (stating court *may* provide for conditional release).

Additionally, the trial court appropriately considered various aggravating factors, for example, Lonergan's use of a knife, abuse of a position of trust, threats to kill the child, and other factors. These factors constitute "substantial and compelling circumstances" for which a trial court may depart durationally even in the absence of Minn.Stat. § 609.-1352, subd. 1 (1990). The trial court was in possession of abundant evidence of Lonergan's predatory pattern of behavior and a thorough evaluation upon which to make an informed exercise of discretion. There was no abuse of that discretion.

## DECISION

The trial court acted within the bounds of discretion in denying a new trial following a post-trial hearing on allegations of errors committed at trial and ineffective assistance of counsel. The sentence imposed was not an abuse of discretion by the trial court.

**Affirmed.**