*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0656**

State of Minnesota,
Respondent,

vs.

Mark Allan Misgen,
Appellant.

**Filed March 14, 2016
Affirmed
Cleary, Chief Judge**

Steele County District Court
File No. 74-CR-13-912

Lori Swanson, Attorney General, Michael Everson, Assistant Attorney General, St. Paul, Minnesota; and

Daniel A. McIntosh, Steele County Attorney, Owatonna, Minnesota (for respondent)

Ted Sampsell-Jones, Special Assistant Public Defender, St. Paul, Minnesota (for appellant)

        Considered and decided by Cleary, Chief Judge; Jesson, Judge; and Kalitowski, Judge.[*]

_____

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**UNPUBLISHED OPINION**

**CLEARY**, Chief Judge

In this appeal from his conviction of first-degree arson and insurance fraud, appellant Mark Allan Misgen challenges the admission of other-crimes evidence to prove he had financial motive to commit arson. We affirm, because even if there was plain error, it did not affect appellant's substantial rights.

**FACTS**

Appellant, his wife, and their four children lived in a single-family home where firefighters responded to two separate fires in the early hours of December 7, 2011. Appellant reported the first fire at approximately 1:50 a.m. He told a police officer that he and his family had just returned home when they discovered smoke in the house. A pot sitting on an electric burner that had been left on was apparently the source of the smoke. Firefighters inspected the house and departed between approximately 2:45 and 3:00 a.m. Appellant and his family went to stay with his mother rather than sleep in the house. Firefighters responded to a second fire at appellant's house within about an hour of their departure after the first reported fire. The second fire destroyed appellant's home.

Appellant and his wife owned and operated two pizza restaurants, one in their home town of Ellendale and another in the nearby town of Lonsdale. Immediately after the second fire, appellant told police that on the night before the two fires, he and his family were out to dinner when he was called to his Lonsdale restaurant to help an employee who was having trouble locking the restaurant door. In the recorded statement he gave to police

on December 7, appellant explained that the employee got the door locked before appellant arrived, so appellant turned around and headed back to Ellendale where he intended to pick up his truck from his father's house. Appellant told an insurance adjuster in a recorded statement that the truck would not start so, at his request, his wife went to purchase isopropyl alcohol to help him start it. When the family finally arrived at their home just before 2:00 a.m. on December 7, appellant stated that they found it filled with smoke. Appellant and his wife later told an insurance adjuster that appellant's wife had been cooking at about 5:30 p.m. on December 6 and that she likely left the burner on. Appellant told police that he did not know how the second fire started.

On May 13, 2013, respondent State of Minnesota charged appellant with first-degree arson in violation of Minn. Stat. § 609.561, subd. 1 (2010) and insurance fraud in violation of Minn. Stat. § 609.611, subd. 1(a)(2) (2010). On August 13, 2013, appellant filed a pretrial motion requesting an order preventing the state from introducing "any evidence that [appellant] has been guilty of additional misconduct and crimes on other occasions." In the motion, appellant argued that such evidence is not admissible on the "grounds that the prosecution's notice . . . is not specific enough, does not specify the exception, was not included as required in the State's Rule 9 disclosures, the evidence is more prejudicial [than] probative, and is remote." At this point, the state had not yet given any notice that it intended to introduce such evidence. Appellant's objection was part of a series of boilerplate objections included in the motion, many of which related to matters that were irrelevant to the case.

3

The matter was set for trial in late September 2014. On May 12, 2014, the state filed a notice of evidence of additional offenses pursuant to Minn. R. Crim. P. 7.02 and Minn. R. Evid. 404(b). The state's notice indicated its intent to offer evidence of appellant's "check kiting" and various estimated liabilities to show the financial pressure appellant was experiencing at the time of the fire.[1] The record indicates that there were no further pretrial motions and no further hearings were conducted or requested.

At trial, the state introduced evidence tending to undermine appellant's version of events. Witnesses testified that appellant's employee was not working on December 6 and did not have trouble locking the door at the pizza restaurant. Testimony also suggested that the employee did not call appellant's cell phone as appellant claimed. And the state introduced evidence showing that appellant was not at all times in the locations he claimed to be on the night of the fire, and that he and his wife had been storing large amounts of personal property at their business.

Evidence also suggested that appellant and his wife were struggling under a large amount of debt. When an insurance adjuster interviewed them and asked whether they had outstanding debts, appellant and his wife said that appellant paid child support and they had a mortgage on their home. But appellant and his wife did not report that they had accounts in collection; that they had written multiple checks with insufficient funds; or that they had outstanding tax obligations. When asked if both of their restaurants had positive

---

[1] We refer to confidential information found in the record only where appellant has already made that information a matter of public record via briefing and statements in public hearings.

4

cash flow, appellant and his wife indicated that they did. At trial, the state introduced evidence showing that the businesses had a negative cash balance. Appellant's recorded statement to police was played for the jury, as were the recorded statements appellant and his wife gave the insurance adjuster.

The state also introduced eyewitness testimony suggesting that appellant's wife drove to the house to pick appellant up after the first fire, at about 3:00 a.m., and at that time, appellant walked from his wife's car to the house carrying a small object. Appellant's wife testified that she and appellant then went to his mother's house and stayed there until they received a call about the second fire at about 6:00 a.m. However, appellant's neighbor testified that she heard a car approach appellant's house at about 3:15 a.m. She identified it as appellant's car after it was parked. The neighbor observed a man resembling appellant park at the house and go inside, leaving the car door open. At about 3:30 a.m., two men driving home from work observed that appellant's house was on fire and called 9-1-1. Firefighters arrived about ten minutes later, at which time the house was engulfed in flames.

A deputy state fire marshal, an insurance investigator, and an electrical engineer were among those investigating the cause of the fire. The marshal and the insurance investigator testified that they thought the fire started in an interior closet and was intentionally set. Additional evidence included a statement from a witness who had been

appellant's co-defendant in an earlier case which resulted in appellant's felony conviction.[2] The co-defendant testified at trial about his own felony and stated that appellant had, in the past, asked him about fire investigation and insurance claims associated with fires because the witness had worked as an EMT at a fire department and had taken a fire science class.

After a seven-day jury trial, the jury found appellant guilty of both charged offenses. On January 21, 2015, the district court sentenced appellant on the arson count to 58 months at a Minnesota correctional facility. Appellant filed this appeal from his judgment of conviction.

## D E C I S I O N

Appellant argues that the district court erred by admitting evidence of his prior bad acts to prove he had a financial motive to commit arson. The state argues that the challenged evidence is admissible to establish the elements of the charged offenses and to prove motive.

Evidence of other crimes, bad acts, or wrongs is not admissible as character evidence to show that a defendant acted in conformity with that character. Minn. R. Evid. 404(b); *State v. Spreigl*, 272 Minn. 488, 490, 139 N.W.2d 167, 169 (1965). Such other-

---

[2] Appellant objected to testimony that would reveal appellant's prior felony conviction and restitution obligation. The district court instructed the witness not to reveal any information about appellant's felony. The district court also instructed a different witness not to draw attention to the reason for an item titled "restitution portion" in a table showing appellant's liabilities at the time of the fire. The table was shown to the jury and the witness discussed appellant's liabilities, but it was not revealed that appellant had a prior felony conviction. Additionally, references to appellant's felony conviction and associated restitution obligation were redacted from recorded statements that were played for the jury.

crimes evidence—also referred to as *Spreigl* evidence—is admissible to establish motive, opportunity, intent, absence of mistake or accident, identity, knowledge, preparation, or plan. Minn. R. Evid. 404(b); *State v. DeWald,* 464 N.W.2d 500, 502-03 (Minn. 1991). "Motive is not an element of most crimes, but the state is usually entitled to prove motive because motive explains the reason for an act and can be important to a required state of mind." *State v. Ness*, 707 N.W.2d 676, 687 (Minn. 2006) (quotation omitted). To admit other-crimes evidence, a district court must find that: (1) the state gave notice of its intent to admit the evidence; (2) the state clearly indicated what the evidence will be offered to prove; (3) there is clear and convincing evidence that the defendant participated in the prior act; (4) the evidence is relevant and material to the state's case; and (5) the probative value of the evidence is not outweighed by its potential prejudice to the defendant. *Ness*, 707 N.W.2d at 685-86. Evidence of other offenses may also be admissible where that evidence "tend[s] to establish any of the elements of the offense with which the accused is charged, even though such facts and circumstances may prove or tend to prove that the defendant committed other crimes." *State v. Riddley*, 776 N.W.2d 419, 425 (Minn. 2009) (quotation omitted).

> [T]he rule excluding evidence of the commission of other offenses does not necessarily deprive the state of the right to make out its whole case against the accused on any evidence which is otherwise relevant upon the issue of the defendant's guilt of the crime with which he was charged.

*Id.* (quotation omitted).

7

Where a party objects to admission of evidence at or before trial and the court makes a definitive ruling on the record admitting the evidence, the party normally does not need to renew its objection to preserve a claim of error for appeal. Minn. R. Evid. 103(a); *State v. Litzau,* 650 N.W.2d 177, 183 (Minn. 2002). However, "evidentiary objections should be renewed at trial when an in limine or other evidentiary ruling is not definitive but rather provisional or unclear." *State v. Word*, 755 N.W.2d 776, 783 (Minn. App. 2008). "[A]ttorneys have an obligation to seek clarification regarding whether an in limine ruling is definitive when there is doubt on that point." *Id.*

In this case, appellant filed a pretrial motion objecting to the introduction of any evidence of appellant's other misconduct or crimes. The state filed its notice on May 12, 2014, approximately nine months after appellant's pretrial motion. The district court admitted the majority of the state's proffered evidence without objection during trial four months later. The district court record contains no ruling on the admissibility of *Spreigl* evidence. Nor is there any indication in the record that appellant ever renewed his objection to the admission of *Spreigl* evidence, requested a hearing on the issue, or objected to the district court's apparent failure to rule on the issue. Because the district court went forward without making a definitive ruling on the admission of evidence of appellant's prior bad acts, appellant should have renewed his objection to preserve the issue for appeal.

If a defendant fails to object to admission of *Spreigl* evidence, the district court is left to consider whether to sua sponte strike the evidence or give the jury limiting instructions as to its use. *State v. Vick*, 632 N.W.2d 676, 685, 687 (Minn. 2001). Generally,

the district court's failure to do either is not reversible error. *Id.* at 685. The district court should give a specific instruction regarding the permissible use of such evidence if a defendant requests an instruction. *State v. Broulik*, 606 N.W.2d 64, 69 (Minn. 2000). But even where defense counsel does not make a specific request, the district court "should give an appropriate cautionary instruction both upon receipt of the other-crime evidence and as part of the final instructions." *State v. Bolte*, 530 N.W.2d 191, 197 (Minn. 1995). If counsel fails to request such instructions and the district court fails to give them, it does not create "grounds for reversal absent a showing of plain error." *State v. Bauer*, 598 N.W.2d 352, 365 (Minn. 1999).

After the initial boilerplate motion over a year before trial, appellant did not file any further motions regarding admission of other-crimes evidence. During trial, he did not object to the great majority of the testimony that referred to evidence listed in the state's notice. Appellant did not object when the district court failed to give limiting instructions as evidence was introduced, nor did he object to the final jury instruction, which included no cautionary instruction as to permissible use of other-crimes evidence.

Where a district court admits *Spreigl* evidence and a defendant fails to object or fails to renew his objection, we review for plain error. *State v. Washington*, 693 N.W.2d 195, 205 (Minn. 2005); *Word*, 755 N.W.2d at 783. The appellant must demonstrate that "(1) there was error, (2) the error was plain, and (3) the error affected the defendant's substantial rights." *Washington*, 693 N.W.2d at 204. "To satisfy the third prong, [an appellant] bears a heavy burden of persuasion to show that the error was prejudicial and

affected the outcome of the case." *Vick*, 632 N.W.2d at 685 (quotation omitted). If an appellant shows that the three prongs are met, a reviewing court "may correct the error only if it seriously affects the fairness, integrity or public reputation of judicial proceedings." *Washington*, 693 N.W.2d at 204 (quotation omitted).

With respect to the question of whether there was error, it is unclear from the record how the district court viewed the evidence described in the state's Minn. R. Crim. P. 7.02 and Minn. R. Evid. 404(b) notice. The state's notice referred to evidence of appellant's check kiting and various outstanding financial liabilities. It is not clear whether the district court considered the evidence to be evidence of crimes, wrongs, or acts that have been previously prosecuted; evidence arising out of the same occurrence or episode as the charged offense; or other-crimes evidence under Rule 404(b). Because it is not clear that the *Spreigl* procedural safeguards apply to immediate-episode evidence, it is also not clear that the state must give notice before offering such evidence. *See Riddley*, 776 N.W.2d at 428 (declining to reach the question of whether immediate-episode evidence should be treated as Rule 404(b) bad-acts evidence).

Because the district court made no ruling and appellant never renewed his objection or sought clarification from the court, we cannot determine whether the district court considered any of the evidence to be *Spreigl* evidence. As a result, we will not evaluate whether the district court plainly erred when it admitted evidence of appellant's check kiting, failure to file income taxes, and other outstanding financial liabilities. But, we may decide whether the admission of this evidence affected appellant's substantial rights,

10

without deciding whether it was plain error. "If any prong of the [plain-error] test is not met, the claim fails." *State v. Jackson*, 714 N.W.2d 681, 690 (Minn. 2006).

Appellant bears the burden of showing that the district court's error affected his substantial rights, meaning that the admission of other-crimes evidence without any limiting instruction "was prejudicial and affected the outcome of the case." *State v. Griller*, 583 N.W.2d 736, 741 (Minn. 1998). "Error is prejudicial if there is reasonable likelihood that the error had a significant effect on the jury's verdict." *Jackson*, 714 N.W.2d at 690 (quotation omitted). We consider the entire record in determining whether there is a significant likelihood that other-crimes evidence improperly affected the jury's verdict. *State v. Frisinger,* 484 N.W.2d 27, 31 (Minn. 1992). In general, factors that reduce the likelihood that testimony regarding a defendant's other crimes unfairly affected the outcome of trial include: whether defendant has notice that other-crimes evidence is going to be introduced; whether other-crimes evidence is described with sufficient particularity to permit the defendant to muster a defense in advance of trial; whether testimony was properly introduced, without objection; and whether the jury received cautionary instructions at appropriate times. *Vick*, 632 N.W.2d at 685-86, 693. Also of relevance are "whether the [s]tate dwelled on the evidence in closing argument and whether the evidence of guilt was overwhelming," and "whether the [s]tate presented other evidence on the issue for which the other crime evidence was offered." *Riddley*, 776 N.W.2d at 428.

Appellant has not demonstrated on appeal how the admission of evidence of appellant's financial crimes improperly affected the outcome of the case. The evidence

was relevant to motive, which the state is entitled to prove even though it is not an element of the charged offenses. *Ness*, 707 N.W.2d at 687. In the state's closing argument, counsel mentioned appellant's unpaid bills, check kiting, and cash payments to employees, along with the fact that appellant's home had not had gas service for over two years. The state argued that such financial difficulty would certainly lead to great stress, which would serve as a motive to burn one's home with the intent to collect on an insurance claim. The state did not focus unduly on appellant's prior bad acts in its opening or closing statements, but highlighted them to emphasize the severity of appellant's financial problems. The state noted that despite many other unpaid bills, appellant and his wife never allowed their homeowners' insurance policy to lapse during the year before the fire, but actually paid it using bad checks. In its closing argument, the state did present check kiting as the first way that appellant tried to solve his financial problems, which could suggest that appellant has a propensity to commit crime. The prosecutor argued, "So frankly, the financial picture shows that they were sinking fast. The short-term solution was to kite these checks. It's kind of a 'robbing Peter to pay Paul' situation . . . ." But immediately after this statement, the prosecutor portrayed appellant's check kiting as a scheme that intensified the financial pressure on appellant by creating an even greater need for an influx of cash. At no time did the state urge the jury to use other-crimes evidence as evidence of appellant's propensity to commit crimes.

The state presented a substantial amount of circumstantial evidence that was unrelated to appellant's prior bad acts. After a seven-day trial in which more than twenty

witnesses testified, almost 100 exhibits were received, and the jury heard three recorded statements by appellant, the jury found appellant guilty of arson. Neighbors testified to circumstantial evidence suggesting that appellant was at the house when he claimed to be elsewhere. Evidence was introduced to show that appellant and his wife were storing a large amount of personal property at their business instead of in their home. Other evidence was introduced to show that appellant made cell phone calls at certain locations while claiming to be elsewhere on the night of the fire. Witnesses testified to the speed with which the fire engulfed the house and the shape of burn patterns, stating that it indicated to them than an accelerant was involved and that the fire had been started intentionally.

Appellant argues that because the state's case is built entirely on circumstantial evidence, every piece of evidence was necessary to the jury's determination, including the evidence of appellant's prior bad acts. However, even assuming this to be true, it does not mean that the jury used other-crimes evidence improperly in reaching its verdict. The state did not suggest that the jury use *Spreigl* evidence to determine anything other than motive to commit arson and whether appellant made false representations regarding his finances.

Appellant also had sufficiently particular notice of the state's *Spreigl* evidence. As explained above, the state filed a notice well in advance of trial. The notice specifically described the other-crimes evidence to be offered. The state attached a forensic accounting report to its notice to "provide[ ] the full factual basis supporting the State's Notice of evidence to be offered at trial." Although the district court did not give a cautionary instruction when other-crimes testimony was introduced or in the final jury instructions,

13

the district court's failure to instruct the jury on the proper use of other-crimes evidence did not affect appellant's substantial rights because the state presented a strong case, the state did not urge the jury to misuse the evidence, appellant received adequate notice, and appellant failed to object.

Even if appellant carried his burden of persuasion on the third prong of the plain-error test, an unobjected-to error must seriously affect the fairness, integrity, or public reputation of judicial proceedings before this court will correct it. *Washington*, 693 N.W.2d at 204. Appellant received a complete, adversarial trial. The trial was lengthy and the evidence varied. Most of the testimony did not focus on other-crimes evidence. Prosecutors did not focus unduly on evidence of appellant's prior bad acts and they did not encourage the jury to misuse the evidence to seek a conviction for an improper purpose. Any error by the district court did not affect the fairness, integrity, or public reputation of judicial proceedings.

**Affirmed.**