# STATE AND ANOTHER v. BETTY CLARK AND ANOTHER.

189 N. W. (2d) 167.

August 13, 1971—Nos. 42580, 42581.

*Donald J. Heffernan,* for appellants.

*Daniel A. Klas,* Corporation Counsel, *Pierre N. Regnier,* Chief Prosecuting Attorney, and *Robert C. Hoene,* Assistant Prosecuting Attorney, for respondent.

Heard before Knutson, C. J., and Rogosheske, Peterson, Kelly, and Rolloff, JJ.

PETERSON, JUSTICE.

Defendants, Betty L. Clark and Michael S. Clark, mother and son, were each convicted in St. Paul municipal court of the statutory offense of simple assault, Minn. St. 609.22, and the ordinance violation of disorderly conduct, St. Paul Legislative Code, § 438.02. Trial of the ordinance charges to the court and the statutory charges to the jury were consolidated by consent of the defendants. Both were sentenced to 45 days in the workhouse, with 30 days suspended, on each charge, the sentences to run consecutively. Each appeals from the judgments of conviction.

St. Paul Police Officers Thomas Drewry and Robert Selby were called to investigate a disturbance near the Village Bar, 230 Front Street, in St. Paul, on October 26, 1969, at 1:25 a.m. They observed a crowd of people drinking beer, several of whom were engaged in an altercation which ended as they drove up. The officers advised the participants that their drinking was in violation of a city ordinance and directed them to dispose of their beer and to disperse. Michael Clark threw a bottle in the direction of Officer Drewry, which broke against a wall, a chip of broken bottle striking and cutting Drewry's hand. Clark shouted an obscenity at the police officers and, pursued by Officer Drewry, ran down an alley adjacent to the bar and into the back door of the Clark home at 936 Galtier.

Drewry knocked on the door and defendant Betty Clark opened the door. Drewry, who was in uniform, identified himself as a police officer and stated that he was there to arrest the young man who had just entered. She stated that "nobody had come in the back door" and that "there was no boy in the house." At this point Drewry heard a noise within the house, entered, and saw defendant Michael Clark standing in the living room.

As Drewry attempted to arrest defendant Michael Clark, Clark struck and kicked him. Mrs. Clark, shouting obscenities, likewise assaulted Drewry.

Two other police officers, Michael Perzichilli and Douglas Wills, took the two defendants to police headquarters. The officers testified, over objection, that defendant Michael Clark, while en route to police headquarters, stated to them that he would find out where they lived and retaliate against their families, and both defendants joined in directing continued obscenities to the officers. As defendant Michael Clark was being escorted to the jail area at police headquarters by Officer Drewry, he again struck Drewry and renewed his obscene and threatening statements to him.

■ Defendants contend that the trial court erred in admitting testimony of the police officers concerning the obscene and threatening statements made by defendants at and subsequent to the time of the arrest, on the ground that there was no Rasmussen hearing to test the admissibility of these statements. The prosecution had stipulated that it did not intend to use any statements in the nature of admissions or confessions. These statements were not inadmissible either as the product of in-custody police interrogation or otherwise incident to an unlawful arrest. They were spontaneous statements made by the defendants. The making of the statements, specified in the written complaint, constituted the offense of disorderly conduct and were not admissions or confession of an unrelated crime. The warrantless arrest by an officer in hot pursuit, whose identity and purpose were made known to defendants, was not improper. Because the statements were accordingly not inadmissible on any constitutional grounds, a Rasmussen hearing would have served no useful purpose.

■ Defendants contend that they were prejudiced by improper comment of the prosecutor in closing argument to the jury with respect to the statutory charge of simple assault.

The prosecutor commenced his argument with these words:

"In 1966 or '67, in Oakland, California, a word was born. Huey Newton, founder of Black Panthers, had a confrontation

with the police. The word 'pig' was born. It is a word that affronts us every day, 'pig.' "

These defendants were not black, however, so it does not appear to have been particularly inflammatory. The trial court, moreover, intervened to direct counsel to confine argument to the issues.

The prosecutor closed his argument by referring to the breakdown of law and order, with the apparent implication that defendants thought they were a law unto themselves. He stated in the development of this theme:

"I believe I already stated to this concept of law and order. When are we going to concede that at night time, at 1:30 in the morning, the police are going to control the streets? That we are not going to allow bottle throwing, obscenity shouting, young men to run the streets. * * * When are we going to concede in this society that this kind of behavior must be stopped? It can be stopped right here with you six people by a verdict of guilty."

An argument that a conviction is necessary to stop this kind of conduct is not proper, but a reference to the need for "law and order" was so implicit in the nature of the events as not to be grossly inflammatory.

As well stated in A. B. A. Project on Standards for Criminal Justice, Standards Relating to The Prosecution Function and The Defense Function (Approved Draft, 1971) § 5.8, a prosecutor "should not use arguments calculated to inflame the passions or prejudices of the jury" and he "should refrain from argument which would divert the jury from its duty to decide the case on the evidence, by injecting issues broader than the guilt or innocence of the accused under the controlling law, or by making predictions of the consequences of the jury's verdict." Observance of these standards does not inhibit the prosecutor from a vigorous statement of the state's case against the accused. We think that the prosecutor improperly strayed from these standards in argument to the jury, but in view of the strong

evidence against defendants we are not persuaded that their conviction was unduly influenced by the arguments of the prosecutor.

■ Defendants contend that they were, in any event, impermissibly tried and sentenced for two offenses constituting a single behavioral incident contrary to Minn. St. 609.035. Assuming that these were, as defendants contend, multiple violations that occurred at substantially the same time and place and arose out of a continuous and uninterrupted course of conduct, manifesting an indivisible state of mind, State v. Johnson, 273 Minn. 394, 405, 141 N. W. (2d) 517, 525, defendants' contention must be rejected on the authority of City of Bloomington v. Kossow, 269 Minn. 467, 131 N. W. (2d) 206, in which we held that a non-traffic violation of a municipal ordinance is not the kind of "offense" contemplated by the limitations of Minn. St. 609.035. We are not impelled to a reexamination of the decision in Kossow,[1] where, as here, the unsuspended portions of the two sentences were still less than authorized for a single offense.

Affirmed.

---

[1] Cf. State v. Gladden, 274 Minn. 533, 144 N. W. (2d) 779, and State v. Corning, 289 Minn. 382, 184 N. W. (2d) 603. See, also, Note, 50 Minn. L. Rev. 1102, 1123 to 1126.