**STATE of Minnesota, Respondent,**

v.

**Eugene THREINEN, Appellant.**

**No. 82–143.**

Supreme Court of Minnesota.

Jan. 7, 1983.

C. Paul Jones, Public Defender, and Kathy King, Asst. Public Defender, Minneapolis, for appellant.

Warren Spannaus, Atty. Gen., St. Paul, Thomas W. Foley, County Atty., and Steven C. DeCoster, Asst. County Atty., St. Paul, for respondent.

PETERSON, Justice.

A Ramsey County Grand Jury indicted defendant Eugene Threinen on July 2, 1981, for first-degree murder, in violation of Minn.Stat. § 609.185(1) (Supp.1981). A jury found defendant guilty as charged, and the trial court judge sentenced him to life imprisonment. We affirm the conviction.

On appeal defendant claims (1) the evidence was insufficient to support the first-degree murder conviction; (2) certain line-up identification testimony should have been excluded at trial; and (3) an improper closing argument by the prosecutor denied defendant a fair trial.

Early on May 25, 1981, a caretaker of an apartment building located at 982 East Ivy in St. Paul found a bloody purse near his car. Police officials were immediately contacted. In examining the purse, an officer found papers with the name of Mrs. Theodore Maier, 1045 East Hyacinth, St. Paul, on them.

Officers went to this address and found evidence of a break-in: a broken window, blood on the window, and a partially opened back door. They entered the house. Someone had ransacked the bedroom. Blood was on the wall, curtain, furniture, and floor. Mattresses were lying on the floor. One officer lifted a mattress and found the body of Mrs. Grace Maier. She lay on her stomach in a pool of blood, a butcher knife handle protruding from her back. The blade of the knife extended through her aorta and esophagus and emerged from her chest, causing rapid loss of blood. Her head also appeared severely beaten, most likely caused by stomping or kicking. Numerous slash wounds on the victim's body indicated that she made a vigorous effort to resist her attacker. The victim lived alone, and was 81 years old.

Police located defendant that day in the apartment building at 982 East Ivy. He had broken into the apartment, which belonged to a former girlfriend; she was not present and he had not had her permission to be in the apartment. Defendant appeared hung over from drinking; his hands and feet were cut and bloody. Evidence obtained from the apartment included a Shoppers Charge credit card with Theodore Maier's name on it (he lived at Bethesda Infirmary), a white blouse and checkbook belonging to the victim, bloodstained tennis shoes and socks, and some bloodstained currency.

The evidence placed defendant at the homicide scene. Indeed, defendant admitted burglarizing the Maier home. But he testified that an accomplice, Ray Ellsworth, committed the murder.[1] According to defendant's testimony, the following sequence of events occurred. Defendant left his halfway house residence about 10:30 or 11 p.m. to visit his former girlfriend. He resided in the Midway area of St. Paul; she lived in east St. Paul. He took a jug of vodka and lemonade with him. She testified that she had not seen defendant for 2 months, that she was not expecting him, and that she was not in her apartment when he arrived.

Defendant then decided to visit "John," an acquaintance from St. Cloud Reformatory. He testified that he did not know John's last name but that he knew his address. Defendant was seen in the vicinity of East Orange Street. He knocked on the door of Elizabeth Brzoska's home. When she responded, defendant, who was alone, asked for John but could not otherwise explain his presence on her doorstep.

---

1. It is worthy of mention that defendant could be "criminally liable for a crime committed by another if he intentionally aids, advises, hires, counsels, or conspires with or otherwise procures the other to commit the crime." Minn. Stat. § 609.05, subd. 1 (1980). This is so even if the other person has not been charged or convicted of the crime. Minn.Stat. § 609.05, subd. 4 (1980). The state did not, however, rely on this theory.

Defendant then said he met Ray Ellsworth, also an acquaintance from St. Cloud Reformatory, and, at Ellsworth's suggestion, agreed to burglarize a house. Defendant said that he cut his hand breaking the window to the house they intended to burglarize. Defendant let Ellsworth enter through the door. Significantly, defendant testified that Ellsworth entered the bedroom and abused Mrs. Maier and that, when he protested, Ellsworth hit him. Defendant remembers taking a purse and wallet while Mrs. Maier was still standing, but he claims not knowing what happened after he left. Defendant did not know how the blood got on his trousers.

Defendant returned to his former girlfriend's apartment, which he had broken into earlier that day, and passed out in front of her door. Two people saw him early on Monday morning. He was wearing blue jeans. Defendant got up and somehow got into the apartment, although he denied having broken the doorjamb to do so. He took off the blue jeans and slept in the cutoff jeans he was wearing under them until an officer's knock awakened him.

Ellsworth denied any involvement in the burglary and murder, testifying that he was with his girlfriend and her sister all weekend. Both women corroborated this testimony. Ellsworth had been picked up on May 24, 1981, for another East Side burglary, and had shared a cell with defendant during his detention.

■ 1. The conviction under review rests upon circumstantial evidence. A conviction based upon such evidence is sustained upon appeal when the "reasonable inferences from such evidence are consistent only with defendant's guilt and inconsistent with any rational hypothesis except that of his guilt." *State v. Kotka,* 277 Minn. 331, 334, 152 N.W.2d 445, 448 (1967), *cert. denied,* 389 U.S. 1056, 88 S.Ct. 806, 19 L.Ed.2d 853 (1968). *State v. Gibbons,* 305 N.W.2d 331, 336 (Minn.1981). *State v. Lubenow,* 310 N.W.2d 52, 57 (Minn.1981).

■ We are convinced that the circumstantial evidence of record was consistent only with defendant's guilt in the murder—and inconsistent with any other *rational* hypothesis except that of his guilt. Defendant's bloodstained clothing (with the victim's blood type on it) directly pointed towards his involvement in the murder. Police found no evidence indicating the presence of a third person at the homicide scene. Only the testimony of defendant would place Ellsworth at the scene of the homicide. The jury disbelieved defendant and found him guilty of first-degree murder.[2] The evidence amply supports the conviction.

2. Defendant contends that his right to a fair trial was denied because of admission of evidence from an impermissibly suggestive lineup. The argument stems from the factual context of the lineup at which Mrs. Brzoska identified defendant: he was the only person barefoot, he had the darkest complexion of the five persons in the lineup, and Mrs. Brzoska knew that a suspect was in custody.

■ Decision is controlled by *State v. Long,* 298 Minn. 581, 216 N.W.2d 640 (1974). We there held that a conviction would not be reversed and a new trial ordered where defendant admits his presence at the robbery scene (where eyewitnesses saw him). Here, defendant admits that he knocked on Mrs. Brzoska's door and asked for "John." She turned on the light and saw him. Additionally, the lineup—under all circumstances—did not lead to substantial likelihood of an irreparable mistaken identification. *Manson v. Brathwaite,* 432 U.S. 98, 116, 97 S.Ct. 2243, 2253, 58 L.Ed.2d 140 (1977). Mrs. Brzoska testified that she

---

2. Defendant did not explicitly argue that the evidence was insufficient to support a first-degree murder conviction (with premeditation). The particular brutality of the murder supports an inference of premeditation. *State v. Martin,* 261 N.W.2d 341, 345 (1977); *State v. Wahlberg,* 296 N.W.2d 408 (Minn.1980). In any event, premeditation need not be proved if defendant intentionally killed Mrs. Maier while committing a burglary or aggravated robbery. Minn.Stat. § 609.185 (Supp.1981). Defendant was charged under this section as well.

could only see defendant from the waist up and could not see his shoes. Both the pre-trial and in-court identification were properly not excluded from evidence.

■ 3. Defendant's final claim of error stems from the prosecutor's statement in closing argument, suggesting that the jury represented the people of the community and that their verdict would determine what kind of conduct would be tolerated on the streets. These comments were improper. I Standards for Criminal Justice § 3–5.8(d) (1980). *State v. Clark,* 296 N.W.2d 372 (Minn.1980).

However, the trial judge promptly sustained an objection to the comments, and gave curative instructions to the jury. The prosecutor's comment, moreover, was an isolated instance in a lengthy, otherwise unobjectionable argument. Under these circumstances, as well as the strong evidence of his guilt, it is unlikely that the comment played any part in influencing the jury to convict defendant. *State v. Caron,* 300 Minn. 123, 128, 218 N.W.2d 197, 200 (1974). *See also, Donnelly v. DeChristoforo,* 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974).

The conviction is affirmed.