**STATE of Minnesota, Respondent,**

v.

**Michael Joseph FILIPPI, Appellant.**

**No. C1–82–755.**

Supreme Court of Minnesota.

July 1, 1983.

C. Paul Jones, Public Defender, and Mark F. Anderson, Asst. Public Defender, Friedberg & Peterson and Joseph S. Friedberg, Minneapolis, for appellant.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Alan L. Mitchell, County Atty., and Donovan W. Frank, Asst. County Atty., Duluth, for respondent.

SIMONETT, Justice.

Defendant was found guilty by a district court jury of two counts of assault in the second degree and one count of burglary, Minn.Stat. §§ 609.05, 609.11, 609.222, 609.-

58, subd. 2(1) (1980). The trial court sentenced defendant to consecutive terms of 54 months each for the assault convictions and to a concurrent term of 25 months for the burglary conviction. Defendant's trial counsel filed a notice of appeal from judgment of conviction. The state public defender agreed to let the trial counsel file a separate brief on defendant's behalf challenging defendant's sentence under the Sentencing Guidelines. Subsequently, the state public defender filed a brief challenging the sufficiency of the evidence with respect to the assault convictions and the propriety of admitting the other-crime evidence. We affirm defendant's conviction and his sentence.

At 11:15 p.m. on January 28, 1981, defendant and an accomplice, Robert Leisz, burglariously entered a drugstore in downtown Ely. Two police officers, responding to a report that the store was being burglarized, entered the store with their guns drawn and their flashlights on. One of the burglars fired two shots at the officers, after which the officers fired a total of four shots at the burglars. Defendant and Leisz were each hit once. The men then surrendered.

Defendant and Leisz were originally charged with two counts of attempted first-degree murder, two counts of assault in the second degree, and burglary. Leisz pleaded guilty to two counts of assault in the second degree and one count of burglary. He was sentenced to a term of 68 months in prison.

Shortly before defendant's trial the state dismissed the two counts of attempted first-degree murder against him. Leisz, who at 23 was defendant's junior by about 9 years, testified for defendant at defendant's trial. He claimed that the gun was his, that defendant had never seen him with the gun before, and that he did not tell defendant that he was carrying the gun with him during the burglary.

The *Spreigl* evidence admitted against defendant concerned defendant's participation in a 1976 armed robbery. In that incident defendant met two sailors at a bar in Kenosha, Wisconsin, and offered them a ride back to the training center at Great Lakes, Illinois. When they got outside defendant got in between the two men in the back seat of the car and defendant's two accomplices, who were in front, drove a short ways. The driver then stopped the car and the passenger in the right front seat pulled a gun and ordered the two to give their wallets to defendant. He then ordered one of the two to get out and remove his clothes. This sailor started to do this but then ran. The gunman fired at him but missed. The other, who testified against defendant in this case, then was required to remove all his clothes except his underwear and was left on the road.

1. Defendant's first contention is that the evidence of his guilt was legally insufficient.

Minn.Stat. § 609.222 (1980) provides that "Whoever assaults another with a dangerous weapon but without inflicting great bodily harm may be sentenced to imprisonment for not more than five years or to payment of a fine of not more than $5,000, or both." Section 609.224 provides that whoever does either of the following commits an assault: "(1) Does an act with intent to cause fear in another of immediate bodily harm or death; or (2) Intentionally inflicts or attempts to inflict bodily harm upon another."

Section 609.05 provides in part:

Subdivision 1. A person is criminally liable for a crime committed by another if he intentionally aids, advises, hires, counsels, or conspires with or otherwise procures the other to commit the crime.

Subd. 2. A person liable under subdivision 1 is also liable for any other crime committed in pursuance of the intended crime if reasonably foreseeable by him as a probable consequence of committing or attempting to commit the crime intended.

Subd. 3. A person who intentionally aids, advises, hires, counsels, or conspires with or otherwise procures another to commit a crime and thereafter abandons his purpose and makes a reasonable effort to prevent the commission of the

crime prior to its commission is not liable if the crime is thereafter committed.

If Leisz and defendant had gone into the drugstore in broad daylight during regular hours and Leisz had drawn a gun and committed a robbery and defendant had not actually done anything in the drugstore other than accompany Leisz, the issue would be an issue under subdivision 1. An example of such a case is *State v. Garretson,* 293 N.W.2d 44 (Minn.1980). In that case the defendant, a juvenile, was charged with participating with three juveniles in the aggravated robbery of a cab driver. The evidence established that defendant did not actively participate in the commission of the offense but was present and did not express surprise or protest. *Spreigl* evidence was admitted which established that the defendant was also present during the commission of a similar robbery of a taxicab driver 2 hours later. Citing *State v. Parker,* 282 Minn. 343, 164 N.W.2d 633 (1969), which discusses the relevant principles in detail, we held that the evidence of the defendant's participation in the first robbery was sufficient.

The issue in the instant case is an issue under subdivision 2. Defendant's attorney judicially admitted that defendant participated in the burglary and the real issue for the jury was whether defendant should also be held criminally liable for the assaults committed during the burglary by Leisz, his accomplice.

■ The test of whether defendant should be held criminally liable for the assaults is a two-part test: (1) whether the assaults were committed in furtherance of the intended crime and (2) whether the assaults were reasonably foreseeable by defendant as a probable consequence of the commission of the burglary. There is no claim that the assaults were not committed in furtherance of the burglary. The dispute is over whether defendant could have reasonably foreseen that Leisz would assault the police as he did.

■ Whenever two people commit a burglary it is reasonably foreseeable that they might encounter some person or that the burglary might be interrupted by the police or someone else. Whether one party to a conspiracy to burgle could have reasonably foreseen that the other might commit an assault in the event of such an encounter or interruption is a question of fact for the jury. But in making its factual determination, the jury is entitled to make reasonable inferences from the evidence, including inferences based on their experiences or common sense.

It is questionable whether the focus in this case should be on whether defendant knew or could have reasonably foreseen that Leisz would carry a gun with him into the drugstore. That is, it is arguable that the state only had to prove that it was reasonably foreseeable that the burglary might be interrupted and that Leisz might respond in some sort of an assaultive fashion. It is also arguable that the state satisfied this burden simply by proving that defendant intentionally participated in the commission of a burglary. Stated differently, just as burglary of a dwelling "always carries with it the possibility of violence," *State v. Nunn,* 297 N.W.2d 752, 754 (Minn.1980), a burglary of this sort carries with it the possibility of violence, and it seems reasonable to infer from defendant's mere intentional participation in the burglary that defendant knew or could foresee that the burglary might result in violence.

■ However, we do not need to decide this because it is clear that the state's evidence was also sufficient to establish that defendant either knew or reasonably could foresee that Leisz would carry a gun into the drugstore and that he might use it if he deemed it necessary. Common sense indicates that if two people plan a burglary they usually discuss the matter in detail beforehand, including whether or not to carry weapons. The jury could rely on that item of common sense. The jury also could rely on the evidence that Leisz and defendant had known each other for at least a month. The jury knew that Leisz had two prior burglary convictions and a prior conviction for assaulting a policeman and it

could have inferred that during the planning of the burglary defendant must have learned something about Leisz' criminal past. That knowledge had at a very minimum put defendant on notice that he was dealing with a person of doubtful character and bad judgment and that he took his chances in conspiring with him. The jury also knew that Leisz and defendant rode in the back seat of the car from Madison, Wisconsin, to Ely, a trip of about 8 or 9 hours, and they reasonably could discredit Leisz' testimony that he was able to slip the gun from a bag into his pants and under his shirt without defendant seeing it. The jury also could infer that Leisz and defendant knew that some people, probably police, were entering the drugstore because although one of the officers heard some noise when they entered they did not hear any noise thereafter. The noise may well have been the noise of Leisz readying his gun for firing, something he apparently had minor difficulty doing. Given the lighting and defendant's closeness to Leisz, the jury could have inferred that defendant saw this. Given the testimony of police that they did not see defendant hold up his arms or hear him surrender and given the testimony that one of the officers saw both men crouched next to the counter moments before the gun was fired, the jury could reasonably infer that defendant was participating with Leisz in some sort of hastily concocted plan to use the gun to avoid apprehension. We do not know for sure what actually happened but we believe that it is clear from the record that the evidence was sufficient to support defendant's convictions of the two assaults.

■ 2. Defendant next challenges the admission of the *Spreigl* evidence. Minn.R. Evid. 404(a) provides generally that evidence of a person's character is not admissible to prove he acted in conformity therewith on a particular occasion. The rule, which lists three exceptions, does not even apply when character is used for some purpose other than to show that the person acted in conformity with his character. Rule 404(b) deals with some of the usual instances in which character evidence may be admitted for some other purpose. It provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

The preferred approach to applying this rule is to analyze the evidence and determine if the evidence is relevant and material to the state's case, if the evidence of the defendant's participation in the offense is clear and convincing, and if the probative character of the evidence outweighs its potential for unfair prejudice. *See, e.g., State v. Bolts,* 288 N.W.2d 718 (Minn.1980).

■ In determining relevancy, we have generally required that the other crime be similar in some way—either in time, location, or *modus operandi*—to the charged offense, although this, of course, is not an absolute necessity. In this case the defense argued in the trial court and argues on appeal that the fact that defendant was unarmed showed that he did not actually foresee that there might be an assaultive confrontation with police. The other-crime evidence arguably was particularly relevant in this respect: it showed that even when defendant clearly foresaw that a confrontation would occur, as he did in the 1976 robbery, he did not personally possess a gun but relied on others to do it. Thus, the evidence removed the logical foundation for one of the arguments advanced by the defense in its attempt to persuade the jury that the defendant did not know and could not foresee that Leisz would be armed.

The fact that the prior offense was a robbery rather than a burglary and the fact that it occurred in Wisconsin do not necessarily make the evidence irrelevant. Similarly, the fact that 4½ years separated the two offenses is not necessarily significant, since defendant was in prison for a good part of those 4½ years and therefore was,

for the most part, incapacitated from committing crimes. *State v. Scott,* 304 N.W.2d 296 (Minn.1981); *State v. Mills,* 290 N.W.2d 616 (Minn.1980); *State v. DeGidio,* 261 N.W.2d 746 (Minn.1978).

The real issue, in our opinion, is whether the relevance of the evidence was sufficient to outweigh its potential for unfair prejudice. We agree with the trial court that the issue was close. Trial courts have a degree of discretion in such close cases, and we cannot conclude that the trial court erred in exercising that discretion. In any event, we are not convinced that any error, if there was error in admission of the evidence, played a significant role in influencing the jury to convict defendant.[1]

3. Defendant's final contention is that his case should be remanded for resentencing because the trial court was not aware of all the sentencing options.

At the outset, it must be emphasized that this case is not one in which there was any inequity in sentencing. In his brief on the sentencing issue, defendant argues in passing that the imposition of a sentence of 108 months on defendant and a sentence of only 68 months on Leisz, who apparently actually fired the gun, "is not consistent with the Guidelines' attempt to reduce sentencing disparity." He fails to point out that Leisz and he are not similarly situated with respect to criminal history.

Leisz had a criminal history score of three. None of his prior convictions involved use of a dangerous weapon or a firearm and therefore under Minn.Stat. § 609.11 (1980) he was subject only to a mandatory minimum term of 1 year and 1 day for each of the current assault convictions. Assault in the second degree is a severity level VI offense. The presumptive sentence for the offense by a person with a criminal history score of three is 34 (33–35)

months in prison. Relying on Minnesota Sentencing Guidelines and Commentary, II. F.2. (1982), the trial court could have sentenced Leisz consecutively to 35 months for the one assault conviction and 21 months for the other one (the 21 figure being obtained by using a zero criminal history score), making a total of 56 months. Instead, he departed and added an extra 6 months for each assault conviction, making an aggregate term of 68 months in prison. He also sentenced Leisz to a concurrent term of 21 months for the burglary conviction.

Defendant's criminal history score at the time of sentencing was four. Normally, the presumptive sentence for a severity level VI offense by a person with a criminal history score of four is 44 (42–46) months in prison. Relying on Minnesota Sentencing Guidelines and Commentary, II.F.2. (1982), the court normally could have imposed consecutive sentences of 46 months for the one assault conviction and 21 months for the other assault conviction, or an aggregate term of 67 months. However, in this case one of defendant's prior convictions involved the use of a dangerous weapon or firearm and therefore under Minn.Stat. § 609.11, subd. 1 (1980) defendant was subject to a 3-year mandatory minimum term for each of the assault convictions.[2] A 3-year mandatory minimum term translates into a Sentencing Guidelines term of 54 months pursuant to Minnesota Sentencing Guidelines and Commentary, II.E. (1982). The trial court chose to make the two terms consecutive pursuant to II.F.2. (1982), giving defendant an aggregate term of 108 months. He also imposed a concurrent term of 25 months for the burglary.

It is also clear that the use of consecutive sentencing was not improper. *State v.*

---

1. The trial court gave a cautionary instruction at the time the evidence was admitted and as part of its final instructions. The prosecutor did not rely on the evidence in arguing that the jury should convict defendant. Defense counsel in his closing statement argued that the incident had occurred nearly 5 years earlier and was irrelevant and he urged the jury to disregard the evidence. Further, the other evidence of defendant's guilt was very strong.

2. If defendant had committed the offense after the passage of the 1981 amendment to section 609.11, he would have been subject to a mandatory minimum term of 5 years or a Guidelines term of 90 months for each offense.

*Lindsey,* 314 N.W.2d 823 (Minn.1982) (allowing use of consecutive sentencing under section II.F.2. of the Guidelines where the offenses each carried a mandatory minimum term that was greater than the presumptive sentence would have been using the matrix). It is also undisputed that the trial court did not have to use consecutive sentencing, that the court could have made the two 54-month terms concurrent.

Defendant's basic argument is that if the trial court was free to sentence defendant to either 54 months or 108 months, then the court could have sentenced defendant to something in between. He argues that if this is so, then the case should be remanded for resentencing because the trial court thought that its choice was between 54 months and 108 months.

This contention is contrary to that advanced by defense counsel at the time of sentencing. At the sentencing hearing defense counsel agreed that the trial court's choice was between sentencing defendant to 54 months and sentencing him to 108 months. Specifically, defense counsel stated, "It appears that consistent with the guidelines this Court can only do one of two things: Either sentence the defendant to 54 months and 54 months concurrent, or 54 and 54 consecutive." Defense counsel then proceeded to urge the court to make the sentences concurrent.

We hold that defense counsel's understanding of the law at the time of sentencing was correct and that the trial court's choice was between sentencing defendant to concurrent terms of 54 months and an aggregate term of 108 months. Under the circumstances, the trial court was not operating under a misapprehension of its options at the time of sentencing, and therefore there is no need to remand for resentencing.

Affirmed.