STATE of Minnesota, Respondent,

v.

Clifton Lamont COGSHELL, petitioner, Appellant.

No. C9–93–1146.

Supreme Court of Minnesota.

Oct. 6, 1995.

John M. Stuart, Minnesota State Public Defender, Scott G. Swanson, Assistant State Public Defender, Minneapolis, for appellant.

Hubert H. Humphrey, III, Minnesota Attorney General, St. Paul, Tom Foley, Ramsey County Attorney, Darrell C. Hill, Assistant Ramsey County Attorney, St. Paul, for respondent.

## OPINION

TOMLJANOVICH, Justice.

Defendant, Clifton Lamont Cogshell, was found guilty by a district court jury of controlled substance crime in the third degree, Minn.Stat. § 152.023, subds. 1(1) and 3(a) (1992), based on evidence he sold crack cocaine to an undercover police officer.[1] The court of appeals, in an unpublished decision, affirmed defendant's conviction, rejecting defendant's contention that the trial court prejudicially erred in admitting evidence of a prior similar offense by defendant on the disputed issue of identity pursuant to Minn. R.Evid. 404(b). We affirm.

At 9:35 p.m. on October 9, 1992, St. Paul Police Officer Janet Dunnom, working under-

---

1. Defendant was sentenced by the trial court to 34 months in prison, the presumptive sentence for the offense, a severity level VI offense, when committed by a person with a criminal history score of three. As a result of the conviction, defendant's probation was revoked and concurrent sentences of 48 months and 15 months were executed for prior convictions of aggravated robbery and controlled substance crime in fifth degree.

cover, went to a house located on DeSoto Street in St. Paul as part of an ongoing investigation. Dunnom previously had bought crack cocaine there from people identified to her as "Tony" and "Challota" (later identified as Lucille Dobbs). This time when she said she wanted to buy crack cocaine, two men came running down the hallway toward her and displayed their rocks of crack cocaine. Challota said the taller man was her nephew and it was okay for Dunnom to buy from them. Dunnom bought three rocks for $50 from the taller man and two rocks for $50 from the other man. Because Dunnom was involved with an ongoing investigation that was not complete, Dunnom did not then make any arrests. Instead, she tried to get a good look at the two men and remember their appearances so she could identify them later. After leaving the house, she described the two men to another officer, who was monitoring her activity from outside the house.

Over two months later, on December 16, Sergeant Neil Nelson received information from a confidential informant that defendant had been involved in the sale. He assembled photographs of six men, including defendant, and showed them to Dunnom. Dunnom identified defendant as the taller seller.

Defendant was arrested and questioned the following day. He admitted knowing a woman named Challota but denied ever having been to her residence. He told Sergeant Nelson he had been with his cousin, Gary Larkin, the entire day and evening of October 9, and had gone to the Waldorf Corporation that day to get a job application form. He said he did not remember where he was that night but he was not involved in selling crack cocaine and was not at Challota's house.

Defendant had two prior felony convictions, one for aggravated robbery and one for controlled substance crime in the fifth degree, and two misdemeanor convictions of false information to police. The trial court denied the state's motion to admit evidence of the facts underlying the robbery, which was a drug robbery, as other-crime evidence pursuant to Minn.R.Evid. 404(b); however, the court ruled that under Rule 609(a)(1) the state could use the robbery conviction itself, without reference to the underlying facts, to impeach defendant's credibility if he testified. The court ruled that under Rule 609(a)(2) the two false information convictions could be used to impeach defendant's credibility if he testified. The court ruled that the prior controlled substance conviction could not be used to impeach defendant's credibility if he testified, but ruled that evidence of the conduct on which that conviction was based was admissible under Rule 404(b) as other-crime evidence to prove identity, since the state's evidence on identity, consisting primarily of Dunnom's eyewitness identification testimony, was weak.

Defendant testified in his own behalf, claiming alibi. His credibility was impeached by the robbery conviction and the two false statement convictions. His cousin, Larkin, testified in his behalf.

■ 1. We are not troubled by the trial court's decision to admit the eyewitness identification testimony of Dunnom. The trial court and the court of appeals were justified in concluding that the photo display did not violate due process. Due process is violated by such a display if the display was so unnecessarily suggestive as to create a substantial likelihood of irreparable misidentification. *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). This display was not unnecessarily suggestive.

■ 2. Nor are we disturbed by the trial court's rulings on the impeachment use pursuant to R. 609 of the prior convictions, a ruling which finds support in a long line of this court's decisions. *See, e.g., State v. Jones*, 271 N.W.2d 534 (Minn.1978).

3. We focus our attention on the issue of the admission, pursuant to Minn.R.Evid. 404(b), of evidence of the conduct on which defendant's prior controlled substance conviction was based in order to help prove defendant's identity as seller.

The prior offense was committed on July 9, 1991, 15 months before the charged crime. Defendant was observed at 5:15 p.m. at the intersection of St. Albans and Aurora in St.

Paul, an area with a high volume of sales of crack cocaine. Police saw defendant showing two people something and saw him drop a small rock to the ground, then pick it up and put it in his shoe. Police approached defendant and found two small plastic bags with twisted tops, each containing a rock of crack cocaine, and $130 on defendant's person, including six $20 bills.

Minn.R.Evid. 404(b) provides, in relevant part:

> Evidence of another crime, wrong, or act is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. In a criminal prosecution, such evidence shall not be admitted unless the other crime, wrong, or act and the participation in it by a relevant person are proven by clear and convincing evidence.

Each verbal formulation of a particular substantive or procedural principle relating to the admission of other-crime evidence pursuant to this rule has been honed over time in a series of cases going back to *State v. Spreigl,* 272 Minn. 488, 139 N.W.2d 167 (1965), and *State v. Billstrom,* 276 Minn. 174, 149 N.W.2d 281 (1967). The case law, which is well-settled, is set forth in detail in a number of decisions, including, *State v. Bolte,* 530 N.W.2d 191 (Minn.1995); *State v. Wermerskirchen,* 497 N.W.2d 235 (Minn.1993); *State v. Frisinger,* 484 N.W.2d 27 (Minn. 1992); *State v. Axford,* 417 N.W.2d 88 (Minn. 1987); *State v. Filippi,* 335 N.W.2d 739 (Minn.1983).

For our purposes in this case we need only repeat part of what we said in *Frisinger,* 484 N.W.2d at 32:

> The trial court initially should follow the clear wording of Rule 404(b) and look to the real purpose for which the evidence is offered. Under the rule, other-crime evidence is not admissible to prove the character of a person in order to show that the person acted in conformity therewith; but the evidence may be admitted, if for a legitimate purpose, rather than for the for-

bidden purpose of inferring propensity from character. If the evidence is offered for a legitimate purpose, then the exclusion sanction of Rule 404(b) does not apply.

(Footnote omitted.) Regarding the determination of relevance, we said:

> In deciding the relevance of proposed other-crime evidence offered pursuant to Rule 404(b), the preferred approach is for the trial court to focus on the closeness of the relationship between the other crimes and the charged crimes in terms of time, place and modus operandi. *State v. Filippi,* 335 N.W.2d 739, 743 (Minn.1983). The reason for this is that the closer the relationship, the greater is the relevance or probative value of the evidence and the lesser is the likelihood that the evidence will be used for an improper purpose.

484 N.W.2d at 31.

We have made it clear that we "readily uphold" the admission of so-called "signature" crimes to prove identity. *Wermerskirchen,* 497 N.W.2d at 240. We have not *required* that the other crimes be "signature" crimes, *State v. Slowinski,* 450 N.W.2d 107, 114 (Minn.1990), but we have repeatedly said that generally there must be some relation between the other crimes and the charged offense in terms of time, place or modus operandi, *Filippi,* 335 N.W.2d at 743. This means, of course, that the mere fact that the prior crime was of the same generic type as the charged offense (e.g., robbery and robbery) usually isn't sufficient. Examples include: *State v. Eling,* 355 N.W.2d 286 (Minn. 1984) (prior crime used to prove identity was ten years old but remarkably similar to charged offense; both were pharmacy robberies in which the robbers ordered the victims to lie on the floor, demanded "Class A drugs" and ordered the victims "not to push the button"); *State v. Ture,* 353 N.W.2d 502 (Minn.1984) (prosecution of rape-kidnapping; upholding admission on issue of identity of evidence of prior acts that were strikingly similar and closely related in time); *State v. Hudson,* 281 N.W.2d 870 (Minn.1979) (holding it proper to admit other robbery to prove identity where other robbery was committed within five days of charged robbery and robber in each case used the same words).

■ The prior crime in this case certainly cannot be called a unique or "signature" crime. As we said, under our cases, that does not necessarily matter as long as the prior crime is sufficiently or substantially similar and we look to matters such as time, place and modus operandi in determining similarity. If the prior crime is very similar, then the chances increase that the evidence in fact legitimately helps to identify the defendant as the perpetrator of the charged offense. If, on the other hand, the prior offense is not particularly similar to the charged offense, there is an increased possibility that the jury will use the evidence improperly—for example, the jury might conclude that defendant is the type of person who would commit the charged crime and therefore it should not doubt the state's other evidence, however weak, identifying the defendant as the person who committed the offense.

■ Defendant's prior drug offense was committed 15 months earlier, so it clearly was not closely related to the charged crime in temporal terms. The state argues, however, that the two offenses were sufficiently related in that both offenses occurred in the same general area of St. Paul, that both involved the sale or attempted sale of crack cocaine, and that the crack cocaine was packaged in the same way in both cases. While it may be that in fact many retail sales of crack cocaine occur in the same general area of St. Paul every day and that many retail sellers in that area package their product in the same way, we can only look to the record on appeal because that is the record on which the trial court based its admissibility determination. We believe that the issue of whether the trial court abused its discretion in admitting the evidence on this record is close and that other reasonable trial judges might well have exercised that discretion differently. However, after careful deliberation, we do not believe that the trial court

abused its discretion in concluding that evidence was relevant or in making the related determinations that the evidence was needed, that the evidence would not be used by the jury for an improper purpose, or that the evidence would create unfair prejudice pursuant to Minn.R.Evid. 403.[2] Accordingly, we need not and do not address the issue of whether, if there was error, it was prejudicial.[3]

■ 4. While we affirm defendant's conviction, we note in passing that our independent review of the record revealed that the prosecutor elicited evidence that the sergeant had received information regarding defendant and the current offense and that based on that information he had assembled the photographic display containing defendant's picture and showed it to Dunnom. It was improper for the prosecutor to elicit this evidence. *State v. Williams,* 525 N.W.2d 538 (Minn.1994). The potential of the evidence being used by the jury for an improper hearsay purpose outweighed the very limited non-hearsay probative value of explaining why the officer showed Dunnom a display containing defendant's picture. Defense counsel did not object to the admission of this evidence.[4] While the admission of such evidence may constitute plain error of a prejudicial nature requiring the award of a new trial even in the absence of objection, *Williams,* 525 N.W.2d at 544–45, we have concluded that the improper elicitation of the evidence does not require a new trial in this case. However, we take this opportunity to caution prosecutors against eliciting such evidence.

Affirmed.

GARDEBRING, Justice, dissenting.

I respectfully dissent. In this case, the state offered evidence of appellant's prior conviction for possession of crack cocaine to establish identity and "involvement with drugs." The trial court admitted the evi-

---

**2.** On the meaning of "need" and "unfair prejudice" in this context, see *State v. Bolte,* 530 N.W.2d 191, 197, nn. 2, 3 (Minn.1995).

**3.** In *State v. Bolte,* 530 N.W.2d 191, 198 (Minn. 1995), we carefully set forth the correct test to be used in determining whether improper admis-

sion of other-crime evidence was prejudicial error requiring the award of a new trial.

**4.** Defendant also did not object to the remarks by the prosecutor in closing argument of which he complains on appeal.

dence, over appellant's objection, reasoning that "you must possess before you can sell drugs." This is a truism, but if it is sufficient justification for admission of the previous incident in this case, it would provide the basis for admission of *any* prior drug-related activity by any defendant charged with *any* later drug-related crime. I am not prepared to broaden the boundaries of admissible *Spreigl* evidence to allow such a result.

While this court has not insisted upon an absolute identity between the prior offense and the charged offense, we have required some similarity between the two crimes and some characteristics which distinguish the prior misconduct from every similar incident of misconduct committed by other individuals. In *State v. Landin,* 472 N.W.2d 854 (Minn.1991), we said "[In cases where] *Spreigl* evidence is offered to establish identity, the *Spreigl* offense must be similar to the charged offense either in time, location or modus operandi." *Id.* at 859. *See also State v. DeWald,* 464 N.W.2d 500, 502–03 (Minn. 1991). In *State v. Eling,* 355 N.W.2d 286, 292 (Minn.1984), the prior crime was similar to the charged crime in that each involved a pharmacy robbery in which the defendants ordered the victims to lie on the floor, demanded "Class A drugs" and ordered the victims "not to push the button." In *State v. Hudson,* 281 N.W.2d 870 (Minn.1979), we allowed admission of prior robberies which had occurred only five days before and in which the perpetrator used the same words used in the charged offense.

In contrast, in this case, the state identifies two "similarities" of time and location between the July 1991 incident and the current charged offense: they were "close" in time, occurring some fifteen months apart, and they were both in St. Paul. Even the state can identify no distinguishing modus operandi, other than that both incidents involved several pieces of crack cocaine packaged in a plastic bag and displayed in the seller's hands. These characteristics are indistinguishable from the characteristics of virtually every street sale of cocaine in the city and can hardly be said to be relevant to the only disputed issue in this case, the identity of the perpetrator. The state's own witnesses testified to the wide-spread use and sale of crack cocaine, that sellers commonly hold the bags of crack in their hands to show the buyers, and that the prevalent method of packaging in such sales is in small quantities, wrapped in plastic bags. It is well settled that when the admissibility of *Spreigl* evidence is unclear, the accused must be given the benefit of the doubt and the evidence rejected. *State v. Titworth,* 255 N.W.2d 241, 246 (Minn.1977).

Minnesota R.Evid. 404(b) forbids the admission of evidence the only relevance of which depends on the inference that "disposition" points directly to criminal behavior. The *Spreigl* evidence offered here is exactly such evidence. To conclude otherwise, I believe is intellectually dishonest. This court has not previously allowed the admission of such evidence, and it should not do so here.

Finally, I note that this case illustrates the irony of the *Spreigl* process. In *State v. DeWald,* 464 N.W.2d at 504, we directed trial courts to withhold a decision on the admission of *Spreigl* evidence until the state has presented its case and to admit the evidence only where the state's case is "weak." The trial court here identified it as "the ultimate weak case," presumably because, as the state acknowledges, Cogshell's conviction turned on the uncorroborated identification of a single witness made nine weeks after the transaction. Indeed, any link between the crime and the appellant was first made by a confidential informant who may or may not have been reliable. It is highly ironic that only in a case where the evidence is weak, and thus the risk of prejudice is high, do we grant trial court's the option of admitting marginally relevant and questionably reliable evidence to bolster the state's faltering position.

Although we grant trial courts considerable discretion with regard to evidentiary rulings, I conclude that admission of the *Spreigl* evidence here was an abuse of discretion; the evidence should not have been admitted. Further, while such an evidentiary ruling is also subject to the harmless error analysis, I believe the decision was not harmless in this case, given the weakness of the state's case. I would reverse and remand the matter for a new trial.

Page, J., joins in the dissent of Gardebring, J.