**STATE of Minnesota, Respondent,**

v.

**Kevin Vashon LEWIS, Appellant.**

No. C1–95–1095.

Supreme Court of Minnesota.

May 9, 1996.

John M. Stuart, State Public Defender, Melissa Sheridan, Asst. Public Defender, St. Paul, for Appellant.

Hubert H. Humphrey, III, Atty. Gen., Susan Gaertner, Ramsey County Atty., Darrell C. Hill, Asst. Ramsey County Atty., St. Paul, for Respondent.

## OPINION

COYNE, Justice.

Defendant, Kevin Vashon Lewis, was found guilty by a district court jury of first-degree felony murder and attempted first-degree felony murder, Minn.Stat. §§ 609.185(3), 609.17, subd. 1 and 609.05 (1994), and was sentenced by the trial court to concurrent terms of life in prison and 230 months in prison. On direct appeal defendant seeks a new trial on either or both of the grounds: (1) that the trial court committed prejudicial error by allowing the state to present evidence pursuant to Minn.R.Evid. 404(b) of two prior crimes, and (2) that the prosecutor committed plain error of a prejudicial nature in her closing argument to the jury. We affirm.

Defendant's convictions are based on two connected incidents that occurred on April 1, 1994, in St. Paul. At approximately 2:45 p.m., three men in a Pontiac 6000 heading south on St. Albans drove up to Bennie Chaney as he waited at the southwest corner of St. Albans and Iglehart Avenue to cross St. Albans. The man in the front passenger seat displayed a handgun and, using street slang, ordered Chaney to give them his money. Chaney responded by running around the back of the car. As Chaney was running, a man opened the rear door on the driver's side and shot twice at Chaney, missing him.

The car then continued south on St. Albans to Marshall, drove west a block, then turned north on Grotto, where the occupants encountered Joe McKinney, who had stopped his car to talk with some boys whom he knew. One of the occupants of the Pontiac got out, pointed a handgun at McKinney and demanded his money. When McKinney tried to flee by driving away, the man shot at him. McKinney's car travelled northwest through a church parking lot, struck a car in the lot, then crossed Iglehart and struck a tree. The occupants of the Pontiac pursued McKinney and one of the occupants got out and shot him in the head after his car came to rest against the tree. The occupants of the Pontiac then fled north on Grotto for a block before turning west on Carroll. McKinney died early the next day.

Police obtained the license number of the Pontiac from an eyewitness and, later that day, found the car in the parking lot of a St. Paul bar. They determined that the car was registered to a bouncer at the bar, Derrick Dukes, whom they immediately arrested. Police seized a .32 caliber automatic pistol from a jacket belonging to Dukes that was found at the bar. That gun was later identified as the murder weapon. Police subsequently arrested two fellow bouncers at the bar, Steve Morrison and defendant Kevin Lewis. The three men were tried separately.

At defendant's trial the state was able to establish reliably that at about 2:30 p.m. on the day in question Dukes, Morrison and defendant had been seen together in Minneapolis at Dukes' residence, a 15–minute drive from the scene of the crimes committed between 2:45 and 3:00 p.m. The three men had left together in Dukes' car, the Pontiac, and then had returned around 3:10 p.m. Dukes' girlfriend testified at defendant's separate trial that later that afternoon she heard defendant say, referring to McKinney, "No, dog, I shot him in the head. He's dead." She also testified that she heard defendant tell Dukes to "keep his mouth shut."

There was no physical evidence in the Pontiac or at the scene of the crimes linking defendant to the two shootings. The state produced evidence describing the clothing of the three assailants but the evidence was so inconsistent that it was not helpful in connecting defendant to the crimes.

Chaney, the victim of the first crime, and four boys who witnessed the second crime selected photographs from displays of twelve pictures. Chaney positively identified Dukes as the driver of the Pontiac and defendant Lewis as the person sitting in the front seat on the passenger side. All four of the boys selected Dukes' picture, three of them selected defendant's picture, and one of them selected Morrison's picture.

Chaney also identified defendant at trial, saying that he was the man in the passenger seat who had displayed a handgun and, using street slang, ordered him to give them his money. It appears, however, that at Dukes'

separate trial Chaney had identified Dukes, not defendant, as the person who pointed the gun at him. The four boys who witnessed the attack on McKinney were not asked to identify defendant in court.

Defendant did not testify in his own behalf but presented alibi evidence through the testimony of an acquaintance, Cynthia Bommersbach, who claimed she was talking on the telephone with defendant between 2:45 p.m. and 3:15 p.m. on the day in question.

The other-crime evidence presented by the state consisted of evidence that on December 29, 1990, and again on January 4, 1991, defendant had participated with two other men in a violent street robbery and physical assault of a customer who was withdrawing cash from an automatic teller machine in Minneapolis.

■ 1. Defendant's first contention is that the trial court abused its discretion in admitting on the issue of identification, pursuant to Minn.R.Evid. 404(b), the evidence of defendant's participation with two other men in the two violent street robberies committed within one week during the winter of 1990–1991 in Minneapolis.

Minn.R.Evid. 404(b) provides, in relevant part:

> Evidence of another crime, wrong, or act is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. In a criminal prosecution, such evidence shall not be admitted unless the other crime, wrong, or act and the participation in it by a relevant person are proven by clear and convincing evidence.

Relevant recent decisions of this court setting forth in detail the settled case law controlling the admission of other-crime or so-called *Spreigl* [1] evidence include *State v. Cogshell,* 538 N.W.2d 120 (Minn.1995); *State v. Bolte,* 530 N.W.2d 191 (Minn.1995); *State v.*

*Wermerskirchen,* 497 N.W.2d 235 (Minn. 1993); *State v. Frisinger,* 484 N.W.2d 27 (Minn.1992); *State v. Axford,* 417 N.W.2d 88 (Minn.1987); and *State v. Filippi,* 335 N.W.2d 739 (Minn.1983).

In *Frisinger,* we said that the trial court, in determining admissibility, should look first to the real purpose for which the other-crime evidence is offered:

> Under the rule, other-crime evidence is not admissible to prove the character of a person in order to show that the person acted in conformity therewith; but the evidence may be admitted, if for a legitimate purpose, rather than for the forbidden purpose of inferring propensity from character. If the evidence is offered for a legitimate purpose, then the exclusion sanction of Rule 404(b) does not apply.

484 N.W.2d at 32 (footnote omitted). With respect to the determination of relevance, we said:

> In deciding the relevance of proposed other-crime evidence offered pursuant to Rule 404(b), the preferred approach is for the trial court to focus on the closeness of the relationship between the other crimes and the charged crimes in terms of time, place and modus operandi. *State v. Filippi,* 335 N.W.2d 739, 743 (Minn.1983). The reason for this is that the closer the relationship, the greater is the relevance or probative value of the evidence and the lesser is the likelihood that the evidence will be used for an improper purpose.

484 N.W.2d at 31.

Of all our prior decisions, the one most helpful in deciding this case is our recent decision in *State v. Cogshell,* 538 N.W.2d 120 (Minn.1995). In *Cogshell* we said:

> We have made it clear that we "readily uphold" the admission of so-called "signature" crimes to prove identity. *Wermerskirchen,* 497 N.W.2d at 240. We have not *required* that the other crimes be "signature" crimes, *State v. Slowinski,* 450 N.W.2d 107, 114 (Minn.1990), but we have repeatedly said that generally there must

---

**1.** *See State v. Spreigl,* 272 Minn. 488, 139 N.W.2d 167 (1965); *State v. Billstrom,* 276 Minn. 174,

149 N.W.2d 281 (1967).

be some relation between the other crimes and the charged offense in terms of time, place or modus operandi, *Filippi,* 335 N.W.2d at 743. This means, of course, that the mere fact that the prior crime was of the same generic type as the charged offense (*e.g.,* robbery and robbery) usually isn't sufficient. Examples include: *State v. Eling,* 355 N.W.2d 286 (Minn.1984) (prior crime used to prove identity was 10 years old but remarkably similar to charged offense; both were pharmacy robberies in which the robbers ordered the victims to lie on the floor, demanded "Class A drugs" and ordered the victims "not to push the button"); *State v. Ture,* 353 N.W.2d 502 (Minn.1984) (prosecution of rape-kidnapping; upholding admission on issue of identity of evidence of prior acts that were strikingly similar and closely related in time); *State v. Hudson,* 281 N.W.2d 870 (Minn.1979) (holding it proper to admit other robbery to prove identity where other robbery was committed within five days of charged robbery and robber in each case used the same words).

The prior crime in this case certainly cannot be called a unique or "signature" crime. As we said, under our cases, that does not necessarily matter as long as the prior crime is sufficiently or substantially similar and we look to matters such as time, place and modus operandi in determining similarity. If the prior crime is very similar, then the chances increase that the evidence in fact legitimately helps to identify the defendant as the perpetrator of the charged offense. If, on the other hand, the prior offense is not particularly similar to the charged offense, there is an increased possibility that the jury will use the evidence improperly—for example, the jury might conclude that defendant is the type of person who would commit the charged crime and therefore it should not doubt the state's other evidence, however weak, identifying the defendant as the person who committed the offense.

538 N.W.2d at 123–24.

In *Cogshell,* the defendant was convicted of selling crack cocaine to an undercover police officer in a crack house and the issue was whether the trial court abused its discretion in admitting, pursuant to Minn.R.Evid. 404(b), evidence of the defendant's participation in a prior crack cocaine offense on the issue of identity. We said:

> Defendant's prior drug offense was committed 15 months earlier, so it clearly was not closely related to the charged crime in temporal terms. The state argues, however, that the two offenses were sufficiently related in that both offenses occurred in the same general area of St. Paul, that both involved the sale or attempted sale of crack cocaine, and that the crack cocaine was packaged in the same way in both cases. While it may be that in fact many retail sales of crack cocaine occur in the same general area of St. Paul every day and that many retail sellers in that area package their product in the same way, we can only look to the record on appeal because that is the record on which the trial court based its admissibility determination. We believe that the issue of whether the trial court abused its discretion in admitting the evidence on this record is close and that other reasonable trial judges might well have exercised that discretion differently. However, after careful deliberation, we do not believe that the trial court abused its discretion in concluding that evidence was relevant or in making the related determinations that the evidence was needed, that the evidence would not be used by the jury for an improper purpose, or that the evidence would create unfair prejudice pursuant to Minn.R.Evid. 403. Accordingly, we need not and do not address the issue of whether, if there was error, it was prejudicial.

538 N.W.2d at 124 (footnotes omitted).

Similarly, while the issue is close and other reasonable trial judges might have excluded the evidence, we conclude that the trial court in this case did not abuse its discretion "in concluding that [the] evidence was relevant or in making the related determinations that the evidence was needed, that the evidence would not be used by the jury for an improper purpose, or that the evidence would create unfair prejudice pursuant to Minn.R.Evid. 403." *Id.* The prior crimes and the current

**364**

crimes were similar in a number of ways: they were all street crimes; the crimes were robberies or attempted robberies; they were all group crimes, that is, crimes in which a number of accomplices participated; they all involved randomly selected victims not known to the assailants; they all involved gratuitous infliction or attempted infliction of injury not necessary within the context and logic of the commission of the crime of robbery; they all involved use of a getaway car. The trial court concluded that the evidence was needed and took appropriate steps to minimize the possibility that the jury might use the evidence for an improper purpose and the possibility that the evidence would create unfair prejudice.

■ 2. Defendant's other contention is that the prosecutor committed prejudicial misconduct in her closing argument. Specifically, defendant calls our attention to the following statement by the prosecutor at the beginning of the prosecutor's closing argument:

Now, hours after the killing the defendant admitted to Miss Fleischman that he had shot someone in the head and so he's dead. In addition to that he said, now I know what it feels like to kill someone, shoot someone, and I don't feel any different. The defendants [sic] own words sadly and very chillingly express what this case is about. The total and absolute lack of respect for the life of another human being. And respect, among other things, is what keeps people together in relationships, in families, in community. And by shooting Joe McKinney the defendant has done the obvious, the painfully obvious. He has taken the life of another man and he has deprived Joe McKinney's family of him in their life. The defendant has done the not so obvious as well, and that is by committing murder he has shattered that sense of security and community and safety in a Saint Paul neighborhood. And that's why this case is entitled the state of Minnesota versus Kevin Vashon Lewis. Because by his blatant violent acts, he effects [sic] a great number of people. And that is why this case is entitled the state of Minnesota versus Kevin Vashon

Lewis. By committing murder he has effected [sic] all the citizens of the state of Minnesota.

Defendant complains, first, that the statement constitutes an improper reference to the effect of the murder on the victim's family. It does not appear that the prosecutor made these comments to inflame the passions and prejudices of the jury. Rather, the prosecutor simply described the inevitable result of the murder. In any event, defense counsel did not object and the reference to the effect of the murder on the victim's family clearly does not constitute plain error of a prejudicial nature requiring reversal notwithstanding defense counsel's failure to object.

■ The prosecutor's comments about the lost sense of security in the community and about the widespread effects of the crimes are more problematic because they refer to issues beyond the defendant's guilt or innocence. That is, the comments emphasize the effect of crimes on all people to such an extent that one could argue that they could have diverted the jury's attention from its true role of deciding whether the state had met its burden of proof. Relevant cases include *State v. Montjoy*, 366 N.W.2d 103, 109 (Minn.1985) (prosecutors "should not emphasize accountability to such an extent as to divert the jury's attention from its true role"); *State v. Threinen*, 328 N.W.2d 154, 157 (Minn.1983) (comments suggesting that the jury represented the people of the community and that the verdict would determine the kind of conduct tolerated on the streets improperly injected issues broader than guilt or innocence); *State v. Clark*, 291 Minn. 79, 82, 189 N.W.2d 167, 170 (1971) (statement suggesting that rampant street crime can be stopped with a conviction is improper).

However, even if the comments were improper, they do not warrant a reversal. The challenged statements make up only a small portion of the closing argument and do not characterize the entire argument. Moreover, as with respect to the reference to the effect of the murder on the victim's family, defense counsel did not object and the statements, at least on this record, do not constitute plain error of a prejudicial nature requiring a new

trial notwithstanding defense counsel's failure to object.

In summary, we conclude that defendant received a fair trial and, accordingly, we affirm.

Affirmed.

GARDEBRING, Justice (dissenting).

I respectfully dissent from the majority's approval of the admission of *Spreigl* evidence in this instance. The majority seems to believe that, while this defendant's previous offenses do not rise to the level of similarity required of so-called signature crimes, they are nonetheless simply "similar enough." This strikes me as reminiscent of the old adage "close enough for government work" and is certainly not an adequate basis for the admission of damaging, highly prejudicial evidence.

Our prior cases require, not request or encourage, the articulation of the nature of the supposed similarity between the instant and prior offenses. *Spreigl* evidence is admissible for the legitimate purpose of establishing motive, intent, absence of mistake, identity, or common purpose or plan. *State v. DeWald*, 464 N.W.2d 500, 502–03 (Minn. 1991). This court has held that so-called prior crime evidence may be admitted if it is similar to the charged offense in either time, place, or modus operandi. *State v. Filippi*, 335 N.W.2d 739, 743 (Minn.1983). However, as one of the majority's quotations points out, that the prior crime is simply of the same generic type as the instant offense is insufficient to allow its admission as *Spreigl* evidence. *State v. Cogshell*, 538 N.W.2d 120, 123–24 (Minn.1995).

Quoting *Cogshell*, the majority implies, but does not state, that the prior crimes admitted in this case are similar enough in terms of their modus operandi to prove identity. *Ante*, at 363. Yet, the only similarity between the crimes is that they were robbery/assaults—that is, of the same generic type. The prior crimes occurred three and a half years previously, involved robbery/assaults, which occurred at night, in the ATM vestibule of a Minneapolis bank, and involved victims who had just withdrawn money from the cash machines; in each of them, appellant was the getaway driver but was not otherwise directly involved. In each, the victims were beaten by their assailants, who, as noted, did not include the appellant. In each, the weapon was a bat or tire iron.

The facts of the crime at issue here could hardly be more different and still bring it within the same section of the Minnesota criminal code. The robbery/assaults at issue here did not involve individuals who had just left a cash machine, but rather were directed at individuals either walking or driving through the streets of St. Paul. Here, in one instance the assailants approached the victim in an automobile and discharged firearms from inside the automobile, and in the other, the victim himself was inside an automobile. No bats or tire irons were used and the appellant is charged with being the main assailant, not merely the driver. These facts are very different and appear to violate the requirement of *Cogshell* that the acts not only comprise a violation of the same statute, but that they be factually similar. One must ask: where is the identity at which the majority hints? Where is the modus operandi?

While trial courts certainly merit the considerable discretion invested them to make close evidentiary rulings, they are not infallible and I believe the admission of this prior crimes evidence was an abuse of discretion. Trial errors of this type are subject to a harmless error analysis, *State v. Howard*, 324 N.W.2d 216, 222–23 (Minn.1982), *cert. denied*, 459 U.S. 1172, 103 S.Ct. 818, 74 L.Ed.2d 1016 (1983), and I also believe, reviewing the weak nature of the state's case, that this error was not harmless. I would, therefore, reverse the trial court and remand the matter for a new trial.

I have recorded my dissatisfaction with the use of *Spreigl* evidence on several occasions. *See, e.g., State v. Cogshell*, 538 N.W.2d 120, 124 (Minn.1995); *State v. Walsh*, 495 N.W.2d 602, 607 (Minn.1993); *State v. Berry*, 484 N.W.2d 14, 19 (Minn.1992) (dissenting opinions of Gardebring, J.) The *Spreigl* decision, I believe, all too frequently allows the introduction of prejudicial evidence precisely when it most ought to be excluded, namely, when the state's case is weak. *See Cogshell*,

538 N.W.2d at 125 (Gardebring, J., dissenting).

The evidence described above was not probative of the identification of the perpetrator of the crime and should not have been admitted. Its admission allowed the jury to bolster its decision to convict with the assumption that, even if this defendant did not commit this particular crime, he has committed violent crimes in the past and therefore is likely to do so again, so it is best just to use this opportunity to put him behind bars. To affirm its admission with scant analysis to illuminate how and why this evidence rises to the level of similarity required by our prior decisions serves only to perpetuate the problems spawned by *Spreigl.*

PAGE, Justice (dissenting).

I join in the dissent of Justice Gardebring.